Marvin NEIMAN, d/b/a Concourse Nursing Home, Plaintiff,

v.

LOCAL 144, HOTEL, HOSPITAL, NURS-ING HOME & ALLIED HEALTH SERVICES UNION, AFL–CIO, Peter Ottley as President, John Kelley as Sec-retary-Treasurer, Burton B. Turkus, James J. McFadden, and Marilyn M. Le-vine, Defendants.

LOCAL 144, HOTEL, HOSPITAL, NURS-ING HOME & ALLIED HEALTH SERVICES UNION, AFL–CIO, Peter Ottley as President, John Kelley as Sec-retary-Treasurer, Third-Party Plaintiffs,

v.

GREATER NEW YORK HEALTH CARE FACILITIES ASSOCIATION, INC., a New York not-for-profit corporation, In-dividually and on behalf of its member residential health care facilities, Bartho-lomew Lawson, Individually and as Ex-ecutive Director, Third-Party Defend-ants.

No. 80 CV 2202.

United States District Court, E. D. New York.

April 7, 1981.

Jackson, Lewis, Schnitzler & Krupman, New York City, for plaintiff; Gregory I. Rasin, New York City, of counsel.

Vladeck, Elias, Vladeck & Engelhard, P.C., New York City, for defendants and third-party plaintiffs; Steven Kahn, New York City, of counsel.

Jeffrey Cohn, New York City, Greater New York Health Care Facilities Ass'n, Inc., for third-party defendants.

*Memorandum of Decision and Order*

MISHLER, Senior District Judge.

The primary cause of action arises out of an arbitration award[1] issued on May 22, 1980 which purportedly required plaintiff, Marvin Neiman, to grant certain wage increases and benefits to the employees working at Concourse Nursing Home who are employed by C.N.H. Management Associates, Inc. (hereinafter "C.N.H."). Neiman is the sole proprietor of Concourse Nursing Home (hereinafter "the Home") and has contracted with C.N.H. for the performance of all services at the Home, including the responsibility of managing all aspects of employee relations. The ultimate relief sought is to have the May 22, 1980 arbitration award vacated. One of the grounds offered in support of such relief is that third-party defendants, Greater New York Health Care Facilities Association, Inc. (hereinafter "the Association") and Lawson, who acted as plaintiff's representative in the arbitration proceedings which led to the arbitration award herein disputed, had no authority to act as plaintiff's agent. By so representing themselves, the Association and Lawson, plaintiff contends, "fraudulently assisted in the procurement of the award." (Complaint at ¶ 30). *A fortiori*, "Defendant Arbitrators did not have authority to preside over a matter involving, and render an award against, plaintiff or C.N.H." (Complaint at ¶ 31).

After their invitation into this action, third-party defendants brought on the instant motion for an order disqualifying the law firm Jackson, Lewis, Schnitzler & Krupman (hereinafter Jackson, Lewis) as attorneys for plaintiff in this action. The Association and Lawson cite Canons 4, 5 and 9 of the Code of Professional Responsibility[2] as the authority for the assertion that their former attorneys Jackson, Lewis should withdraw from this action. Because we disagree with third-party defendants the motion seeking disqualification is denied.

## FACTS

As sole proprietor of the Home, plaintiff has sought the assistance of counsel in numerous labor relations matters, and in that capacity, Jackson, Lewis has continually served as the Home's labor counsel since October 1974. The services provided over the years by Jackson, Lewis have covered: all matters involving the Home and defendant Local 144; all proceedings before the National Labor Relations Board; all other proceedings involving employee relations matters; and all personnel-related matters. Jackson, Lewis has served as C.N.H.'s exclusive labor counsel since its inception in August 1978. The importance of the relationship between owner and employer, the Home and C.N.H. respectively, and their labor counsel needs no discussion.

The Association, formerly named the Metropolitan New York Nursing Home Association, Inc., is a non-profit, multi-employer organization of residential health care facilities. The Association offers a variety of services, and as is pertinent here, it represents some of its members in labor negoti-

1. The complaint was filed with the Clerk of the Court on August 12, 1980. By stipulation of the parties dated September 11, 1980, the Arbitrators who issued the May 22, 1980 award have been dropped from the action.

Due to an oversight, the undersigned failed to note one of the named defendants, an arbitrator, until some time after argument on this motion. Because of the social relationship which the undersigned maintains with the arbitrator, the undersigned directed his law clerk to contact the parties and inform them that the action would be reassigned by the court's random selection procedure to another judge. When Jackson, Lewis was so advised, it pointed out that the arbitrators had been dropped

from the action. Accordingly, reassignment in light of such action was unnecessary. Jackson, Lewis agreed to inform the parties of this court-initiated communication.

2. Canon 4 provides that "[a] lawyer should preserve the confidences and secrets of a client." ABA Code of Professional Responsibility, Canon 4.

Canon 5 states that "[a] lawyer should exercise independent professional judgment on behalf of a client." ABA Code of Professional Responsibility, Canon 5.

Canon 9 provides that "[a] lawyer should avoid even the appearance of impropriety. ABA Code of Professional Responsibility, Canon 9.

ations and arbitrations, and serves as a resource for other members. Neiman was a member of the Association as well as a member of its Board of Directors (the "Board") from October 1974 until June 1980 when he withdrew from the Association. As a member of the Board, Neiman was "directly involved in the policy and decisional making processes of the Association in all operational, administrative, financial, and labor matters," (Affidavit of Marvin Neiman, ¶ 11), and as such, the information he was entitled to included all information known by Jackson, Lewis in its capacity as the Association's labor counsel. (Plaintiff's Memorandum in Opposition at p. 6). Movants do not contest either Mr. Neiman's extensive involvement in the policy making and operational aspects of the Association or his access to information known by Jackson, Lewis. Moreover, throughout the two-year period the Association had Jackson, Lewis under retainer, commencing in November 1976 and formally terminating in November 1978, the Association knew that the firm was simultaneously representing Neiman, and though it is not expressly stated in any of the papers submitted on this motion, we have every reason to believe that the Association was also aware of Jackson, Lewis' relationship with plaintiff prior to retaining Jackson, Lewis as its counsel. Movants fail to take issue with these facts, but rather rejoin that "[t]he fact of or extent to which Jackson, Lewis represented plaintiff Neiman on a personal level [during the time they represented the Association] is not relevant to this application for relief." (Affidavit of Jeffrey R. Cohn, ¶ 6).

As the Association's counsel, Jackson, Lewis represented its individual member facilities in numerous and varied labor matters. This is not in dispute though there is disagreement on how related those matters were to the matter presently before this court.

## DISCUSSION

Although no direct claim has been asserted between plaintiff and the Association, it is the Association's contention that Jackson, Lewis' participation in the main litigation would unduly prejudice their position as third-party defendants. Specifically, it cites the firm's knowledge of the inner operations of the Association and its knowledge of the collective bargaining history involving Neiman, Local 144 and the Association. Such information, it is contended, was acquired while Jackson, Lewis served as the Association's labor counsel.

In deciding this motion the court is cognizant of both its responsibility to enforce professional ethical standards as well as its obligation to uphold the individual's right to select counsel of his choice.

■ The instant motion by third-party defendants presents the question of disqualification in a rather unique context since the movant is not a direct adversary to the client, Neiman, who is represented by its former counsel. Though plaintiff makes a persuasive argument that third-party defendant lacks standing to bring on the motion for disqualification, our liberal reading of the Code of Professional Responsibility convinces us otherwise. An attorney may not be permitted to use confidential information "to the *disadvantage* of the client and a lawyer should not use, except with consent of his client and after full disclosure, such information for his own purposes." EC 4-5, ABA Code of Professional Responsibility (emphasis added). We believe the parties' positions are sufficiently adverse so that third-party defendant has standing to object to representation of plaintiff by Jackson, Lewis. The third-party defendants' interest here is not distinguishable from that of an indemnitor who has an interest of a sufficiently adverse nature so as to permit intervention under Rule 24 of the Federal Rules of Civil Procedure. *See International Telephone and Telegraph Corporation v. Alexander*, 396 F.Supp. 1150, 1167–68 (D.Del.1975).

■ With respect to the merits of this motion, the Association urges the application of the "substantial relationship test" as announced in *T. C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F.Supp. 265 (S.D.N.Y.1953), however:

[B]efore the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he *could* have received information which his former client might reasonably have assumed the attorney would withhold from his present client.

*Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir. 1977) (emphasis supplied in original). While we have some doubt that the application of Judge Weinfeld's "substantial relationship test" would dispose of this motion consistent with the Association's wishes, we need not resolve our uncertainty since disqualification is unwarranted based upon the authority of *Allegaert v. Perot*.

During the period of representation by Jackson, Lewis, third-party defendants knew at all times of the relationship between Jackson, Lewis and Neiman. Given Neiman's position as a member of the Board, third-party defendants could not have assumed that any information learned by Jackson, Lewis would have been withheld from Neiman. In *Allegaert v. Perot, supra*, the appellant sought disqualification of a law firm which had at one time represented the appellant in a derivative action arising out of a realignment agreement. Prior to and contemporaneous with such representation, the firm had represented the former client's adversary in the main action in that same matter, i. e., the realignment agreement. After stating that the substantial relationship test was not even implicated because the former client could not have reasonably assumed that the law firm would have withheld information from its present client, the Court added:

Integral to our conclusion that [the law firm was] not positioned to receive information intended to be withheld from [the law firm's present client] is the law firm's continuous and unbroken legal relationship with their primary clients. In contrast with our earlier cases, the attorneys sought to be disqualified here have not changed sides from a former to a current, adverse client.... [In earlier cases such as *Emle*, [*Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570–73 (2d Cir. 1973)] *NCK* [*NCK Organization Ltd. v. Bregman*, 542 F.2d 128 (2d Cir. 1976)] and *Hull* [*Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)] it] was the new client/former attorney who might have received confidences while serving as [the former client's] counsel which we found [unacceptable].... Any representation of [the former client] was done with [its] knowledge that the [firm was] still representing [its primary client] and would continue to do so.

*Id.* at 251. Here too, the Association was aware of Jackson, Lewis' "continuous and unbroken legal relationship" with Neiman. Not only did that legal relationship continue, but given Neiman's position as a member of the Board of Directors of the Association, there surely could be *no* expectation that any information learned by Jackson, Lewis would have been withheld from him. The continued representation of Neiman by Jackson, Lewis does not violate Canon 4 of the Code of Professional Responsibility.[3]

The motion to disqualify plaintiff's attorney is denied; plaintiff's motion for costs and expenses, including attorney fees, incurred in responding to this motion is also denied,[4] and it is

SO ORDERED.

---

**3.** In light of the rationale which supports our decision on the instant motion for disqualification pursuant to Canon 4, we find disqualification under Canons 5 and 9 is also unwarranted. *See Armstrong v. McAlpin*, 625 F.2d 433, 446 (2d Cir. 1980) (en banc) (where the appearance of impropriety is "not very clear," ethical problems implicated by Canon 9 are best left to the bar's disciplinary apparatus as long as the attorney's conduct would not tend to "taint the underlying trial"); *Board of Education of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (courts should be reluctant to grant disqualification where Canons 4 and 5 fail to establish good support for such a motion); *Allegaert v. Perot*, 565 F.2d 246, 251 n.7 (2d Cir. 1977) (Canon 5 is inapposite when the parties are aware of their mutual relationship and sophisticated enough to anticipate the potential conflicts arising therefrom).

**4.** Our decision on plaintiff's request for costs and expenses was not arrived at without some struggle.