OPINION OF THE COURT
Smith, J.
Plaintiffs Henry Kassis and North River Insurance Company retained the law firm of Weg & Myers to represent them in an action premised upon property damage to a building owned by Kassis in New York City. Thurm & Heller, a firm of ap *614 proximately 26’ attorneys, is counsel for defendants and third-party plaintiffs, Teacher’s Insurance and Annuity Association and Cauldwell-Wingate Company, Inc. The decisive issue on this appeal is whether Thurm & Heller should be disqualified from continued representation of defendants on the basis that it hired Charles Arnold, a former associate of Weg & Myers who participated in the Kassis litigation while employed there. For the reasons that follow, we hold that Thurm & Heller should be disqualified, and we reverse the order of the Appellate Division that permitted the continued representation.
BACKGROUND
In 1994, two years after commencement of the underlying action, Weg & Myers was substituted as counsel for plaintiffs. Joshua Mallín, a partner at Weg & Myers, was in charge of the case, conducting most of the discovery and planning the litigation strategy. Charles Arnold, a first-year associate, assisted Mallín. Specifically, Arnold conducted five depositions of non-parties and co-plaintiff North River, attended two court-ordered mediation sessions as sole counsel for the client, appeared as Kassis’ attorney at a physical examination of the subject building, and conversed with Kassis on a regular basis. Moreover, the record indicates that Weg & Myers conducted weekly staff meetings where all associates were privy to discussions of law and strategy regarding litigation the firm handled. In addition, Arnold reviewed certain portions of the litigation file in order to conduct the depositions, but allegedly “never read the overwhelming majority of the documents contained within the file.”
In February 1997, following a deposition in the Kassis matter, Arnold informed Roula Theofanis, the partner at Thurm & Heller who was primarily in charge of the Kassis litigation, that he was leaving Weg & Myers. At the suggestion of Theofanis, Arnold was interviewed by Thurm & Heller, and began working there in March 1997. During the interview and upon commencement of his employment, Thurm & Heller cautioned Arnold that he would not be permitted to participate in the. Kassis litigation and that he was not to discuss that matter with anyone at the firm.
Upon learning of Arnold’s employment, Mallín requested that Theofanis detail the precautionary measures that the firm planned to take in order to prevent Arnold’s inadvertent disclosure of confidential information he had obtained while at Weg & Myers. By written response, Theofanis detailed the following safeguards:
*615 “1. The entire file which presently consists of 15 redwells will be kept in my office in lieu of our general filing area.
“2. Mr. Arnold’s office will be at a substantial distance from my office.
“3. Mr. Arnold upon commencement of his employment with the firm on March 3, 1997 will be instructed not to touch the Kassis file nor to discuss the Kassis matter with any partner, associate or staff member of the firm.
“4. There will be no meetings, conferences or discussions in the presence of Mr. Arnold concerning the Kassis’ litigation.
“5. All future associates who may work on the Kassis matter with me in preparation for trial will be instructed not to discuss this file with Mr. Arnold.”
On March 6, 1997, three days after Arnold began working at Thurm & Heller, Mallín moved on behalf of plaintiffs to disqualify the firm from further participation in the Kassis litigation. Supreme Court denied plaintiffs’ motion, finding Arnold’s involvement in the Kassis litigation while employed at Weg & Myers limited. The Appellate Division affirmed, holding that the safeguards employed by Thurm & Heller eliminated the danger of Arnold inadvertently transmitting information he might have gained from his previous employment at Weg & Myers. The court determined that “in light of the implementation of a Chinese Wall, disqualification of Thurm & Heller would provide an undue advantage to Kassis” (243 AD2d 191, 196). Two Justices dissented, concluding that Thurm & Heller should be disqualified as counsel to defendants because it hired an attorney who actively represented the opposing party on the same matter in litigation.
The Appellate Division granted plaintiffs leave to appeal to this Court and certified the following question: ‘Was the order of the Supreme Court, as affirmed by this Court, properly made?” We answer the question in the negative.
ANALYSIS
Attorneys owe a continuing duty to former clients not to reveal confidences learned in the course of their professional relationship. It is this duty that provides the foundation for the well-established rule that a lawyer may not represent a cli *616 ent in a matter and thereafter represent another client with interests materially adverse to interests of the former client in the same or a substantially related matter (Cardinale v Golinello, 43 NY2d 288, 295-296). Indeed, such “side switching” clearly implicates the policies both of maintaining loyalty to the first client and of protecting that client’s confidences. These same principles give rise to the general rule that, where an attorney working in a law firm is disqualified from undertaking a subsequent representation opposing a former client, all the attorneys in that firm are likewise precluded from such representation (id., at 295; see also, Code of Professional Responsibility DR 5-105 [D] [22 NYCRR 1200.24 (d)]; DR 5-108 [22 NYCRR 1200.27 (a) (1)];* see also, Greene v Greene, 47 NY2d 447, 453).
In addition to ensuring that attorneys remain faithful to the fiduciary duties of loyalty and confidentiality owed by attorneys to their clients, the rule of imputed disqualification reinforces an attorney’s ethical obligation to avoid the appearance of impropriety. Furthermore, it protects client confidences from misuse in substantially related and adverse litigation; frees the former client from any anxiety that matters disclosed to an attorney will subsequently be used against it in related litigation; and provides a clear and readily administered test, thereby encouraging self-enforcement among members of the legal profession (see generally, Cardinale v Golinello, supra, at 295-296; Solow v Grace & Co., 83 NY2d 303, 309; Matter of Kelly, 23 NY2d 368, 376).
As we made clear in Solow, imputed disqualification is not an irrebuttable presumption (83 NY2d, supra, at 309; see also, Restatement [Third] of Law Governing Lawyers § 204 [2]). A “per se rule of disqualification,” we stated, “is unnecessarily preclusive because it disqualifies all members of a law firm indiscriminately, whether or not they share knowledge of former client’s confidences and secrets” (83 NY2d, supra, at 309). Such a rule also imposes “significant hardships” on the current client and is subject to abusive invocation purely to seek tactical advantages in a lawsuit (id., at 310). Additionally, a per se *617 disqualification rule “conflicts with public policies favoring client choice and restricts an attorney’s ability to practice” (id.).
Moreover, while the disciplinary rules governing lawyers prohibit attorneys who have represented the former client in a matter from switching sides and impute one attorney’s personal conflicts of interest to his or her current firm (DR 5-105 [D] [22 NYCRR 1200.24 (d)3; DR 5-108 [22 NYCRR 1200.27 (a) (1)]), they do not establish a mandatory disqualification rule. Indeed, as we stated in S & S Hotel Ventures v 777 S. H. Corp. (69 NY2d 437), because disqualification of a law firm during litigation may have significant adverse consequences to the client and others, “it is particularly important that the Code of Professional Responsibility not be mechanically applied when disqualification is raised in litigation” (id., at 444).
Thus, where one attorney is disqualified as a result of having acquired confidential client information at a former law firm, the presumption that the entirety of the attorney’s current firm must be disqualified may be rebutted. Of course, no presumption of disqualification will arise if either the moving party fails to make any showing of a risk that the attorney changing firms acquired any client confidences in the prior employment (see, Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 638) or the nonmoving party disproves that the attorney had any opportunity to acquire confidential information in the former employment. In either case, it would not have been established that the side-switching attorney actually “represented the former client in a matter” (DR 5-108 [22 NYCRR 1200.27]), and neither the attorney nor the firm would need to be disqualified (see, Silver Chrysler Plymouth v Chrysler Motors Corp., 518 F2d 751, 756-757 [2d Cir] [cited with approval in Solow v Grace & Co., 83 NY2d 303, 312-313, supra]).
Where the presumption does arise, however, the party seeking to avoid disqualification must prove that any information acquired by the disqualified lawyer is unlikely to be significant or material in the litigation (Solow v Grace & Co., supra, at 313; Restatement, op. cit., § 204 [2] [a]-[c]; see also, id., § 204 [2], illustration 4). In that factual scenario, with the presumption rebutted, a “Chinese Wall” around the disqualified lawyer would be sufficient to avoid firm disqualification.
To determine whether the presumption of shared confidences and disqualification has been rebutted, consideration must be given to the particular facts of each case. Where, for example, a disqualified attorney formerly worked in a small law firm *618 characterized by a certain informality and conducive to “ ‘constant cross-pollination’ ” and a “ ‘cross current of discussion and ideas’ among all attorneys on all matters which the firm handled,” there will be a greater likelihood of acquiring material client confidences (Cardinale v Golinello, supra, 43 NY2d, at 292). Similarly, where offices are not physically isolated and files are made open and available to all lawyers, the probability that an attorney gained significant confidential information increases (id.).
Other factors also weigh in the balance. In Solow, for example, this Court declined to disqualify the law firm of Stroock & Stroock & Lavan, a 372-lawyer firm which represented plaintiff in a suit against defendant W.R. Grace & Co. Members of Stroock had previously defended Grace in another action, and Grace moved to disqualify the firm from participating in the action. While recognizing the importance of the presumption of shared confidences, the Court nevertheless permitted Stroock to continue as counsel against Grace, its former client. Aside from being a very large firm, the Stroock partner, associate and paralegals who actively participated in the litigation involving the former client had all left the firm long before the current litigation (see, Solow v Grace & Co., 83 NY2d, supra, at 306). Sworn affidavits by the remaining partner and associate at Stroock established that their involvement in the prior Grace litigation had been negligible (id., at 307).
Demonstrating that no significant client confidences were acquired by the disqualified attorney, however, does not wholly remove the imputation of disqualification from a law firm. Because even the appearance of impropriety must be eliminated, it follows that even where it is demonstrated that the disqualified attorney possesses no material confidential information, a firm must nonetheless erect adequate screening measures to separate the disqualified lawyer and eliminate any involvement by that lawyer in the representation (see, Cheng v GAF Corp., 631 F2d 1052).
Here, the undisputed facts in the record evidence that Arnold played an appreciable role as counsel for plaintiff in the Kassis litigation while at Weg & Myers. He was sufficiently knowledgeable and steeped in the files of this case to conduct several depositions that resulted in extensive transcripts; he appeared as sole counsel for the client in two court-ordered mediation sessions; and he conversed regularly with the client. Given Arnold’s extensive participation in the Kassis litigation *619 and Thurm & Heller’s representation of the adversary in the same matter, defendants’ burden in rebutting the presumption that Arnold acquired material confidences is especially heavy. Defendants’ conclusory averments that Arnold did not acquire such confidences during the prior representation failed to rebut that presumption as a matter of law. The erection of a “Chinese Wall” in this case, therefore, was inconsequential. Thus, we hold, as a matter of law, that disqualification is required.
Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiffs’ motion to disqualify the firm of Thurm & Heller as attorneys for defendants and third-party plaintiffs Teacher’s Insurance and Annuity Association and Cauldwell-Wingate Company, Inc. granted and the certified question answered in the negative.
Chief Judge Kaye and Judges Levine, Ciparick, Wesley and Rosenblatt concur; Judge Bellacosa taking no part.
Order reversed, etc.

 Disciplinary Rule 5-108 prohibits an individual attorney “who has represented the former client in a matter” from “represent[ing] another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client” unless the former client consents. Disciplinary Rule 5-105 essentially imputes the personal conflict of interest of the lawyer to his or her current firm. These rules were promulgated as joint rules of the Appellate Divisions of the Supreme Court, effective September 1, 1990.