[740 NYS2d 154]

R.M. Buck Construction Corporation, Respondent, v Village of Sherburne, Appellant.

Third Department, April 4, 2002

### APPEARANCES OF COUNSEL

*Helmer, Johnson, Misiaszek & Hughes,* Utica (*Linda A. Hughes* of counsel), for appellant.

*Melvin & Melvin,* Syracuse (*Kenneth M. Bobrycki* of counsel), for respondent.

### OPINION OF THE COURT

CARDONA, P.J.

On April 6, 1999, defendant retained the services of Roger Bradley, a partner with the law firm of Melvin & Melvin, LLP (hereinafter the law firm), to represent defendant's interests in a dispute with plaintiff, a construction contractor. Plaintiff was the lowest responsible bidder for one of several contracts opened for public bids by defendant in March 1999 for the proposed construction of its wastewater treatment plant improvements project. However, at a postbid meeting on March 31, 1999, Steven Buck, one of plaintiff's corporate officers, indicated that plaintiff's bid only included surficial dewatering and not well point dewatering.* He claimed that well point dewatering was not within the scope of the contract. Defendant disagreed and, as a result, plaintiff sought to withdraw its bid if an agreement could not be reached regarding additional costs for dewatering.

Thereafter, by letter dated April 5, 1999, Buck advised defendant that, subsequent to the March 1999 meeting, a mathematical error was discovered in plaintiff's bid whereby $371,620 was omitted. Buck requested that the bid be waived based upon this error inasmuch as performance would cause undue hardship. Defendant immediately retained Bradley, who, along with another partner at the law firm, Ronald Carr, researched the matter and allegedly advised defendant to, inter alia, obtain plaintiff's full bid documents and conduct a hearing before defendant's Board of Trustees. At the April 12, 1999 hearing, Bradley questioned Buck concerning the dewatering issue and the purported mathematical error. Buck admitted that he lied during the March 1999 meeting when he claimed that the dewatering issue caused the problem with the bid. Although Buck believed, after consultation with other bidders, that "they might have a legitimate basis for seeking additional funds" based on the dewatering issue, it was the alleged math-

---

* Surficial dewatering means to pump away surface runoff. Well point dewatering means to construct subsurface wells and pump water from underground.

ematical error that actually justified the withdrawal of the bid. Buck did not produce the original summary sheet used in making the bid and, instead, submitted documentation prepared after the error was found. At the conclusion of the hearing, Bradley discussed the matter in private with defendant's Board of Trustees and, subsequently, a resolution was passed that denied plaintiff's withdrawal bid and awarded plaintiff the contract. Bradley did not perform any services for defendant after April 14, 1999.

Upon being notified of defendant's decision, plaintiff commenced construction on the project and, in the late spring of 1999, advised defendant that the subsurface conditions contained 15 to 16 feet of clay rather than two feet as indicated in the report of plaintiff's engineer. In May 2000, Edward Sheats, Jr., another attorney with the law firm, served defendant with a notice of claim on plaintiff's behalf seeking moneys for additional work allegedly "occasioned as a result of subsurface site conditions requiring additional dewatering and additional work, labor and materials for the construction of the dewatering system for the project as well as additional cost for dewatering resulting from latent conditions." Thereafter, several additional notices of claim were served on defendant. In October 2000, the law firm commenced this action on plaintiff's behalf alleging causes of action for breach of contract and unjust enrichment. Following joinder of issue, defendant moved to disqualify the law firm from representing plaintiff on the basis of Bradley's prior representation of defendant. Supreme Court denied defendant's motion resulting in this appeal.

Disqualification cases involve consideration of several established principles including an attorney's ongoing duty to protect the confidences of former clients and the "rule that a lawyer may not represent a client in a matter and thereafter represent another client with interests materially adverse to interests of the former client in the same or a substantially related matter" (*Kassis v Teacher's Ins. & Annuity Assn.*, 93 NY2d 611, 615-616). As in the instant matter, where the attorney involved in the first matter is still with the firm sought to be retained by the former adversary, particular attention must be paid to "the general rule that, where an attorney working in a law firm is disqualified from undertaking a subsequent representation opposing a former client, all the attorneys in that firm are likewise precluded from such representation" (*id.* at 616; *see, Cardinale v Golinello*, 43 NY2d 288, 295; Code of Professional Responsibility DR 5-105 [d]; DR 5-108 [a] [1] [22

NYCRR 1200.24 (d); 1200.27 (a) (1)]; *see also, Solow v W.R. Grace & Co.*, 83 NY2d 303; *Greene v Greene*, 47 NY2d 447, 453). Notably, the rule of imputed disqualification reinforces an attorney's ethical obligation to, inter alia, avoid the appearance of representing conflicting interests (*see, Kassis v Teacher's Ins. & Annuity Assn., supra* at 616). However, not all situations involving imputed disqualification mandate that other members of the firm be barred from representation. A court must examine the circumstances of the particular case and, if it is not clear as a matter of law that disqualification of the entire firm is required (*see, Solow v W.R. Grace & Co., supra* at 313), the firm should be given an opportunity to rebut the presumption (*see, Kassis v Teacher's Ins. & Annuity Assn., supra* at 617). Even if the presumption is rebutted, "a firm must nonetheless erect adequate screening measures to separate the disqualified lawyer and eliminate any involvement by that lawyer in the representation [i.e., erect a 'Chinese Wall']" (*id.* at 618).

With these principles in mind, the first issue to be addressed is whether Bradley, the attorney who previously represented defendant during the bidding process, would be disqualified from representing plaintiff in the subsequent breach of contract action regarding the exact same project. Disqualification would be required where "an attorney has represented a client in an earlier matter and then attempts to represent another in a substantially related matter which is adverse to the interests of the former client" (*Solow v W.R. Grace & Co., supra* at 313; *see*, Code of Professional Responsibility DR 5-108 [a] [1] [22 NYCRR 1200.27 (a) (1)]). Here, it is uncontroverted that there was a prior attorney-client relationship between defendant and Bradley, that the interests of plaintiff and defendant are materially adverse and defendant did not consent to the law firm's representation of plaintiff. With respect to the issue of whether the two matters are "substantially related," we conclude that this factor has also been met. While it is true that Bradley represented defendant during the bid process and the current matter involves breach of contract claims, it is apparent from the record that both matters involve, inter alia, disputes regarding the scope and extent of plaintiff's obligations under the parties' agreement. Moreover, given Bradley's participation at the April 12, 1999 hearing on behalf of defendant, disqualification avoids "any suggestion of impropriety" and preserves defendant's "expectation of loyalty" (*Tekni-Plex, Inc. v Meyner & Landis*, 89 NY2d 123, 131).

Although we find that Bradley would be disqualified from representing plaintiff in the current litigation, it is not clear on this record whether the entire firm should be disqualified outright as a matter of law. Under these circumstances, the law firm is given the opportunity to rebut the presumption of disqualification by, inter alia, proving "that any information acquired by the disqualified lawyer is unlikely to be significant or material in the litigation" (*Kassis v Teacher's Ins. & Annuity Assn.*, 93 NY2d 611, 617, *supra*) and presenting "facts establishing that the firm's remaining attorneys possess no confidences or secrets of the former client" (*Solow v W.R. Grace & Co.*, 83 NY2d 303, 313, *supra*). Additionally, consideration must also be given to other factors, including the size of the law firm, the size of office space, the accessibility of files and the relative informality of office interaction (*see, Kassis v Teacher's Ins. & Annuity Assn., supra* at 618). Here, while the law firm was given the opportunity to respond to the disqualification motion and the parties presented, inter alia, competing affidavits, we do not find that plaintiff submitted sufficient proof to rebut the presumption of imputed disqualification. Furthermore, assuming, arguendo, that the presumption was rebutted on this record, we note that there was also insufficient proof that the law firm erected adequate screening measures (*see, id.* at 618). Accordingly, we conclude that defendant's motion should have been granted.

Mercure, Crew III, Mugglin and Lahtinen, JJ., concur.

Ordered that the order is reversed, on the law, without costs, and motion granted.