OPINION OF THE COURT
Jack M. Battaglia, J.
In this action, Pepi Schertz is seeking to recover unpaid rent and other damages from David Jenkins, who rented an apartment in a building that she owns and occupies at 75 Coleridge *299 Street, Brooklyn. On the first day of trial, the elderly plaintiff was having difficulty being responsive to questioning and her daughter, Bella Flom, who helps her with the building, testified on her behalf. Well into Ms. Flom’s testimony, she noted that Thomas B. Pruzan, Mr. Jenkins’s counsel, had represented Ms. Schertz in a Housing Part proceeding against other tenants in the building. Lee M. Nigen, Ms. Schertz’s attorney, moved to disqualify Mr. Pruzan for that reason. The parties were invited to submit papers on the motion, which they have done. The court has concluded that the motion should be denied.
“A party’s entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing that disqualification is warranted . . . and the movant bears the burden on the motion.” (Campolongo v Campolongo, 2 AD3d 476, 476 [2d Dept 2003]; see also Heim v Merritt-Meridian Corp., 236 AD2d 367, 367-368 [2d Dept 1997].) Any doubts must be resolved in favor of disqualification. (See Sperr v Gordon L. Seaman, Inc., 284 AD2d 449, 450 [2d Dept 2001]; Stober v Gaba & Stober, 259 AD2d 554, 555 [2d Dept 1999].)
Plaintiff bases her motion on Code of Professional Responsibility DR 5-108 (22 NYCRR 1200.27), which provides that
“a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure . . . [thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client,” nor “[u]se any confidences or secrets of the former client.” (See Code of Professional Responsibility DR 5-108 [a] [1], [2] [22 NYCRR 1200.27 (a) (1), (2)].)
“A party seeking disqualification of its adversary’s lawyer pursuant to DR 5-108 (A) (1) must prove that there was an attorney-client relationship between the moving party and opposing counsel, that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse.” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d 631, 636 [1998].) Here, as to DR 5-108 (a) (1), the only issue is whether the prior eviction proceeding and this action can be said to be “substantially related.”
The “substantially related” element of conflict of interest analysis apparently finds its roots in Judge Weinfeld’s decision *300 in T.C. Theatre Corp. v Warner Bros. Pictures (113 F Supp 265, 268 [SD NY 1953]; see Crawford v Antonacci, 297 AD2d 419, 420 [3d Dept 2002] [Lahtinen, J., dissenting]). That decision was based upon former Canon 6 of the Canons of Professional Ethics, which proceeded from “[t]he obligation to represent the client with undivided fidelity and not to divulge his secrets or confidences.” (See T.C. Theatre Corp. v Warner Bros. Pictures, 113 F Supp at 268.) As such, there was an articulated link between the “substantially related” concept and client confidences and secrets.
“[T]he Court must ask whether it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject of his subsequent representation. If so, then the relationship between the two matters is sufficiently close to bring the later representation within the prohibition of Canon 6.” (Id. at 269.)
On the other hand,
“[t]he proscription against taking a case against a former client is predicated ... on more than the possibility of use in the second representation of information confidentially obtained from the former client in the first representation . . . Irrespective of any actual detriment, the first client is entitled to freedom from apprehension and to certainty that his interests will not be prejudiced in consequence of representation of the opposing litigant by the client’s former attorney.” (Cardinale v Golinello, 43 NY2d 288, 295-296 [1977].)
The conflicts rule, therefore, is based on “policies both of maintaining loyalty to the first client and of protecting the client’s confidences.” (See Kassis v Teacher’s Ins. & Annuity Assn., 93 NY2d 611, 616 [1999].) DR 5-108 reflects these separate “fiduciary duties of loyalty and confidentiality” (see id. at 616) in the structure of provisions (a) (1) and (2). Thus, the potential conflict should be analyzed separately under each provision (see Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d at 636-638), and disqualification may be required for a “substantially related” matter, even though confidential information is not a factor (see Nationwide Assoc. v Targee St. Internal Medicine Group, 303 AD2d 728, 729 [2d Dept 2003]; 562 Eglinton v Merlo, 277 AD2d 1027 [4th Dept 2000]; Press v Lozier, Inc., 239 AD2d 879 [4th Dept 1997]; see also Sperr v Gordon L. *301 Seaman, Inc., 284 AD2d at 450). Nonetheless, where there is both a “substantial relationship” between the respective subject matters of the former and present engagements, and “it is reasonable to infer that [the attorney] gained some confidential information during [the] former representation . . . which is of [some] value to [the attorney’s] present client” (see Walden Fed. Sav. & Loan Assn. v Village of Walden, 212 AD2d 718, 719 [2d Dept 1995]), the whole may prove greater than the sum of its parts.
In our case, the papers submitted by the landlord/movant would, in themselves, be insufficient to warrant disqualification under either DR 5-108 (a) (1) or (2). No affidavit of the landlord herself or her daughter was submitted. All the attorney’s affirmation tells the court about tenant’s counsel’s prior representation of the landlord is that it related to “another proceeding concerning the subject premises,” “a previous eviction proceeding.” (Attorney’s affirmation in support of motion 1Í1Í1, 2.) As to confidentially, the court is told only that, “[fin that case, counsel was bound to have learned there were legal issues surrounding the number of units that could be occupied within the confines of the law.” (Id. H 5.)
In response, tenant’s counsel acknowledges the prior representation in “a non-payment case against a different tenant in a different apartment,” and states that “[t]here never was an issue of an illegal apartment” in that proceeding. (Affirmation in opposition U 4.) As to confidentiality, counsel argues that “there is no evidence that [the landlord] has disclosed any specific confidences” to him; that the “issue in the case at bar is whether the apartment in question is an illegal apartment,” which is “information of public record and certainly not a confidence at all,” and “clearly something that any party could discover” as part of the disclosure process. (Id. H 6.) Counsel also contends that, because the motion to disqualify was made after trial began, it “is clearly a litigation ploy,” and, if granted, will “impose significant hardships” upon the defendant. (Id. 115.)
Were the court limited to counsel’s affirmations, the motion would be decided without a full and fair consideration of the parties’ respective interests. The court has reviewed in addition the files of two Housing Part proceedings — the proceeding in which Mr. Pruzan represented Ms. Schertz against other tenants, Eugene Korolkov, also known as Guennadijourov, and Tanya Yurov, and the proceeding that Ms. Schertz brought against *302 this defendant, David Jenkins. With limits, the court may take judicial notice of documents in the file and the course of the proceedings. (See Ptasznik v Schultz, 247 AD2d 197, 199 [2d Dept 1998]; Matter of Cagney, 186 Misc 2d 760, 763-764 [Sur Ct, Dutchess County 2001], affd 293 AD2d 675 [2d Dept 2002].)
The nonpayment petition against tenants Korolkov and Yurov (Landlord & Tenant No. 108966/99), which is signed by Mr. Pruzan as attorney, describes the premises as “apt., 3 room(s), floor top in building known as 75 Coleridge Street,” and states that the premises are not subject to rent regulation “in that the premises are located in a building containing less than six families, said premises being a 2 family dwelling * tenant occupying 3 furnished rooms, same being a non-house keeping unit within landlord’s apt.”
Neither of the tenants answered the petition, and a judgment of possession was entered on February 3, 2000. On the same day, a warrant issued to Marshall John F. Marchisotto. Mr. Pruzan’s statement in his affirmation, therefore, that “[t]here never was an issue of an illegal apartment” in the nonpayment proceeding is technically correct; the legality of the “nonhousekeeping unit” was not raised by the tenants or the court. It is apparent, however, from the face of the petition that Mr. Pruzan must have anticipated that the legality of the unit might be questioned.
The holdover petition against Mr. Jenkins (Landlord & Tenant No. 74823/02) was filed on May 29, 2002, and sought possession of the “first floor rear apartment.” Mr. Jenkins appeared, but filed no answer. On July 2, a stipulation was executed in which, in effect, Mr. Jenkins agreed to vacate by August 31, and Ms. Schertz waived any claims for arrears or use and occupancy if he did so. In the stipulation, Mr. Jenkins “waive [d] all defenses, including defense of illegal multiple dwelling.” A judgment of possession was entered on July 3, and a warrant issued to Marshall Norman Katz on September 13. In a statement dated October 29, submitted in connection with a motion, Mr. Jenkins alleged that there were three illegal apartments in the “2 family dwelling.”
The complaint in this action alleges breach of contract and damage to property. The breach of contract claim seeks unpaid rent that constituted the arrears and use and occupancy that were referenced in the stipulation. Mr. Jenkins filed an answer in person, also asserting a counterclaim, that states “renting illegal apartment to me.” A subsequent notice of appearance and *303 verified answer, prepared by Mr. Pruzan’s firm, alleges a number of affirmative defenses and counterclaims, including that the premises “were a de facto multiple dwelling,” that “plaintiff failed to obtain a multiple dwelling registration number and therefore no rent is due.” (Second affirmative defense 11 3.) Based upon Ms. Flom’s testimony on the first day of trial, the “2 family dwelling” may be configured to serve as five separate units.
Starting with DR 5-108 (a) (1), the court cannot say that this action is clearly a “substantially related matter” to the nonpayment proceeding on which Mr. Pruzan represented Ms. Schertz. This court is unaware of any court-articulated standards or guidelines for determining whether two matters are “substantially related” for purposes of the rule. Clearly, though, a similarity of “issues” is an important factor. (See 562 Eglinton v Merlo, 277 AD2d at 1027; American Psych Sys. v Options Ind. Practice Assn., 168 Misc 2d 582, 585-586 [Sup Ct, Westchester County 1996]; see also T.C. Theatre Corp. v Warner Bros. Pictures, 113 F Supp at 269-271.)
When an attorney had represented a landlord “in the negotiation and execution of [a] lease . . . , personally drafting it,” he was disqualified from representing the tenant in an action seeking judgment that the tenant breached the lease. (See Kheel v Continental Baking Co., 219 AD2d 846, 846 [4th Dept 1995].) And when an attorney had represented a tenant in a prior summary proceeding, he was disqualified from representing the landlord in a later summary proceeding against the tenant. (See Revelstoke Props. v Beaumont Neckwear, 114 Misc 2d 545, 548-549 [Civ Ct, NY County 1982].) But those cases presented stronger facts for disqualification than ours, because in Kheel the same parties were clearly involved in both matters, and in Revelstoke Props., it presumably was so.
Sperr v Gordon L. Seaman, Inc. (284 AD2d 449 [2001]) “involve[d] a law firm which, even if for a relatively brief time, represented a client in one personal injury case while simultaneously opposing relief sought by that same client in a separate personal injury case involving the same premises” (id. at 450). The Court disqualified the firm, finding “a more serious risk of an appearance of impropriety than in the case of a lawyer who later adopts a position which is adverse to that of a former client in a substantially related matter.” (Id. at 450.) Our case, of course, is more like the latter, but the suggestion in the opinion is that personal injury actions involving the same premises would be considered “substantially related.”
*304 Other state courts and various federal courts have used different “approaches regarding the substantial relationship test” (see Chrispens v Coastal Ref. & Mktg., Inc., 257 Kan 745, 751-753, 897 P2d 104, 111-112 [1995]), and have considered various factors in reaching a determination:
“(1) The case involved the same client and the matters or transactions in question are relevantly interconnected or reveal the client’s pattern of conduct ...; (2) the lawyer had interviewed a witness who was key in both cases . . . ; (3) the lawyer’s knowledge of a former client’s negotiation strategies was relevant. . . ; (4) the commonality of witnesses, legal theories, business practices of the client, and location of the client were significant . . .; (5) a common subject matter, issues and causes of action existed . . . ; and (6) information existed on the former client’s ability to satisfy debts and its possible defense and negotiation strategies.” (257 Kan at 753-754, 897 P2d at 112.)
Here, again, Mr. Jenkins has asserted the illegality of units in Ms. Schertz’s building as a basis for both his defense to her claim for rent and his counterclaim. In the prior proceeding against other tenants, the petition signed and presumably prepared by Mr. Pruzan suggested on its face a possible issue as to illegality, but the respective time periods of Mr. Jenkins’s tenancy and that of the other tenants were not overlapping. Had the other tenants appeared, or the judge who reviewed the file on the application for a default judgment chosen to raise it, the issue as to illegality would likely have been addressed. But that did not happen.
The issue as to illegality is relevant as well to DR 5-108 (a) (2), but the court cannot say that Mr. Pruzan will “[u]se any confidences or secrets” of Ms. Schertz in his defense of Mr. Jenkins. “While a movant need not actually spell out the claimed secrets and confidences in order to prevail, it must at a minimum provide the motion court with information sufficient to determine whether there exists a reasonable probability that DR 5-108 (A) (2) would be violated . . . [Generalized allegations . . . are insufficient to justify disqualification.” (Jamaica Pub. Serv. Co. v AIU Ins. Co., 92 NY2d at 638; see also Schneider v Saiber Schlesinger Satz & Goldstein, 260 AD2d 321, 321 [1st Dept 1999] [movant “fail(ed) to show the nature and substance of the confidential information (movant) imparted to the attorneys”].)
*305 Neither Ms. Schertz nor her daughter submitted an affidavit on the motion, and so there is no evidence that any confidences or secrets were imparted to Mr. Pruzan in connection with the former representation. The most that is alleged is Mr. Nigen’s supposition that Mr. Pruzan “was bound to have learned that there were legal issues surrounding the number of units that could be occupied within the confines of the law.” (Attorney’s affirmation in support of motion 1Í 5.)
For his part, Mr. Pruzan doesn’t expressly deny having received any confidence or secret, arguing primarily that any relevant information would have been subject to disclosure. (See affirmation in opposition U 5.) Mr. Pruzan is correct that courts do consider whether the information alleged to be confidential or secret would be available through disclosure. (See Crawford v Antonacci, 297 AD2d at 420; Ima Search, Inc. v Locasio, 2001 NY Slip Op 402M[U], *4 [Sup Ct, Nassau County].) But he provides no specifics to support the argument, which, in any event, does not take into account “intangible factors gleaned about a client” (see Crawford v Antonacci, 297 AD2d at 421 [Lahtinen, J., dissenting]) that could prove helpful to the client’s adversary in the subsequent representation.
The argument based on the discovery process, though, does suggest that determinations about disqualification should be made with a sensitivity to the practice context in which the question arises. A summary proceeding in the Housing Part, particularly one that is resolved on default, and a plenary action in Civil Court are different from each other, and are different from antitrust, securities and other large-scale commercial litigation that often generate motions to disqualify counsel and court opinions. Among those differences are the relationship between attorney and client, and the nature and extent of pretrial preparation, assuming that the matters ever come close to trial.
And those differences call into play, in perhaps a more significant way, the “public policies favoring client choice and ... an attorney’s ability to practice [law].” (See Solow v Grace & Co., 83 NY2d 303, 310 [1994].) The landlord/tenant bar is both specialized and subspecialized, and economics require that the residential practice rely on volume. But, it is no exaggeration to note that the overwhelming majority of tenants and a fair percentage of landlords, in both the Housing Part and Civil Court, are unrepresented by any attorney. The court must be concerned that too strict application of rules developed in other contexts not further restrict the availability of representation, without *306 providing any real benefit to the fortunate few who are able to find and afford it.
Moreover, courts are suspicious of disqualification motions made “in the midst of litigation” (see Voss v 87-10 51st Ave. Owners Corp., 292 AD2d 622, 624 [2d Dept 2002]), or on “the eve of trial” (see Natiello v Natiello, 209 AD2d 389, 389 [2d Dept 1994]), because the timing suggests that the motion was made “in bad faith, in order to delay the proceedings, or to secure a tactical advantage” (id. at 389; see also Lucci v Lucci, 150 AD2d 650, 652 [2d Dept 1989]; Thomas Supply & Equip. Co. v White Fathers of Africa, 53 AD2d 607 [2d Dept 1976]).
As previously noted, this motion was made after the trial began, during the testimony of Ms. Schertz’s daughter, when she noted Mr. Pruzan’s prior representation of her mother. The court believes that it is likely that Mr. Nigen did not know of the prior representation until then. But that suggests that neither Ms. Schertz nor her daughter were sufficiently concerned about Mr. Pruzan’s representation of Mr. Jenkins to tell Mr. Ni-gen. In any event, there is still reason to suspect that the motion was designed to achieve a tactical advantage. At an earlier stage in this action, Mr. Jenkins submitted a request for adjournment, explaining that he had been “trying to obtain legal counsel (which has been difficult due to financial reasons).” As just indicated, if this motion is granted, Mr. Jenkins may again have that difficulty. Moreover, Ms. Schertz, as a plaintiff seeking damages, would not appear to otherwise benefit from the delay resulting from disqualification.
“When all significant interests are balanced, and the totality of the circumstances considered” (Heim v Merritt-Meridian Corp., 236 AD2d at 368), the court concludes that Ms. Schertz has not carried her burden of making “a clear showing that disqualification is warranted” (see Campolongo v Campolongo, 2 AD3d at 476).