■ NANCY WALDBAUM NIMKOFF, Respondent, v RONALD A. NIMKOFF, Appellant. [797 NYS2d 3]—

Order, Supreme Court, New York County (Laura Visitacion-Lewis, J.), entered September 22, 2004, which, to the extent appealed from, denied defendant's motion to disqualify the law firm representing plaintiff, unanimously affirmed, without costs. Order, same court and Justice, entered December 3, 2004, which, to the extent appealable, denied defendant's motion for renewal, unanimously reversed, that portion of the motion granted, and, upon renewal, the prior order adhered to, and otherwise affirmed, without costs. Order, same court and Justice, entered December 23, 2004, which directed that all transfers of the parties' child be supervised by Comprehensive Family Services, and that the parties share equally the cost of such supervision, unanimously affirmed, without costs. Order, same court and Justice, entered December 20, 2004, which,

inter alia, prescribed the terms of visitation, and granted or denied assorted other relief, unanimously modified, on the law, the facts and in the exercise of discretion, so as to (1) grant defendant's application for overnight visitation with the parties' child, effective immediately, to the extent that defendant shall have visitation on alternate weekends from Saturdays at 10:00 A.M. through Sundays at 6:00 P.M., unless other arrangements are mutually agreed upon by the parties or set by the IAS court; (2) grant defendant the right to a telephone conversation with the child on each evening that he is not with the child, at either 5:00 P.M. or another set time agreed upon by the parties; (3) direct that responsibility for transporting the child for weekday visitation be shared in the manner requested in plaintiff's September 21, 2004 cross motion, whereby she will take the child to defendant's home for weekday visits and defendant will return the child to plaintiff's home after the visit; (4) remand the matter for a full hearing and determination of a visitation schedule that is in the best interests of the child; (5) vacate that portion barring defendant from representing himself, without prejudice to a further application should further events suggest the need for restraint, on condition that as long as defendant is self-represented, depositions shall be supervised by a referee or a special master whose fees shall be borne equally by the parties; and (6) direct defendant to provide, within 10 days of service of a copy of this order with notice of entry, an affidavit either listing all plaintiff's property in his possession and control or stating that he does not have any such property, upon service of which both parties shall either specifically dispute the other's claim as to what the other possesses, or return the identified property to the other party within 10 days, with the matter to be referred to a referee if disputed; and otherwise affirmed, without costs.

The parties were married on September 8, 2001, their daughter was born on July 17, 2002, and the parties separated on October 28, 2002. This divorce action was commenced on December 4, 2002.

Initially, the motion court properly denied defendant's motion to disqualify the entire law firm representing plaintiff. Defendant's motion was based on the fact that Allison Keil, an associate in the firm representing plaintiff, had previously worked for another firm while that firm was representing defendant in this litigation.

Imputed disqualification pursuant to Code of Professional Responsibility DR 5-108 (22 NYCRR 1200.27) is not an irrebuttable presumption (*Kassis v Teacher's Ins. & Annuity Assn.*, 93

NY2d 611, 616 [1999]). Consideration must be given to the significant hardship that might result to one client as a result of "abusive invocation [of the rule] purely to seek tactical advantages in a lawsuit" (*id.*). Furthermore, "no presumption of disqualification will arise if either the moving party fails to make any showing of a risk that the attorney changing firms acquired any client confidences in the prior employment or the nonmoving party disproves that the attorney had any opportunity to acquire confidential information in the former employment" (*id.* at 617 [citation omitted]). Additionally, when the presumption does arise, the party seeking to avoid disqualification must prove that any information acquired "is unlikely to be significant or material in the litigation" (*id.*). If the presumption is rebutted, then a "Chinese Wall" around the disqualified lawyer would be sufficient to avoid firm disqualification; "consideration must be given to the particular facts of each case" (*id.*).

Here, defendant fails to establish that confidences were revealed to Keil that could be used to his detriment in the ongoing custody dispute. Nor is there any showing that Keil could have availed herself of other material of a confidential nature that would have an impact on the custody and visitation dispute. In contrast, the prejudice to plaintiff if she were required to hire new counsel, while not of paramount importance, cannot be disregarded or minimized here.

Although an in-court conversation between Keil and plaintiff may have had the appearance of a breach of the so-called "Chinese Wall" erected by counsel's firm, under the circumstances we are satisfied that it had no effect on defendant's rights and does not warrant the firm's disqualification.

The IAS court erred in barring defendant from representing himself. Although the right to represent oneself is not absolute, any restriction must be carefully scrutinized (*Walker & Bailey v We Try Harder*, 123 AD2d 256 [1986]). Even where a self-represented attorney-litigant is held in contempt due to misconduct during court appearances, a deprivation of the right to self-representation must be extremely well supported.

Here, even though defendant's interests might be better served with representation by another attorney, and his self-representation may make the litigation process more difficult or unpleasant, the record was inadequate to justify barring him from acting as his own counsel. If there are litigation-related activities, such as depositions, where defendant's self-representation might be cause for concern, the problem can be avoided by ordering that they be conducted under the supervi-

sion of a special master or referee, with the fees to be borne by both parties.

The IAS court's out-of-hand denial of defendant's application for overnight visitation, which he made in August 2004 when the child was two years old, constituted an improvident exercise of discretion. The parties initially entered into a so-ordered stipulation on January 23, 2003, when the child was six months old, in which defendant was given limited visitation, not including overnight stays. Since that time, Dr. Bernice Schaul, the court-appointed forensic psychologist, conducted an evaluation of the parties and the child, and in December 2003 issued a report and recommendations, including the recommendation that "it might be considered to . . . [b]egin overnight visits within the next three months, when Mr. Nimkoff is fully recovered [from a medical procedure] and the parents can agree on the parameters for such visits." There was no indication that defendant's relationship with the child was such that overnight visitation would not be in the child's best interest.

The court's observations of defendant's demeanor and conduct in court should not be the focus when considering the visitation arrangement. The focus must be solely on the child's best interest, which is normally best protected by allowing the development of the fullest possible healthy relationship with both parents (*see Weiss v Weiss*, 52 NY2d 170 [1981]). The negative aspects of defendant's temperament and motivations, upon which Dr. Schaul commented, were not of a nature as to present any risk to the child resulting from an appropriate expansion of the parent-child relationship with the noncustodial parent by increasing visitation to include overnights. We therefore provide for the immediate commencement of overnight visitation on alternate weekends, and remand to the court for fuller determination of the visitation arrangements in the best interests of the child. We are confident that the hearing court will exercise its discretion in this regard with adequate consideration of the crucial role the noncustodial parent can play in the development of the young child.

We affirm that portion of the order entered December 23, 2004, directing that the costs of the court-appointed supervisor of visitation exchanges be shared equally. That portion of the order entered December 20, 2004, which directed that defendant would be responsible for all "pick-ups" and "drop-offs," is modified to direct that the parties share responsibility for driving during the weekday visitations, in the manner plaintiff described in her motion dated September 21, 2004.

Finally, the parties' prenuptial agreement should render a

trial as to property distribution unnecessary. Defendant is directed to provide, within 10 days of service of this order with notice of entry, a sworn affidavit either listing the property in his possession or control which belongs to plaintiff, or stating that he has no such property. If plaintiff does not specifically challenge any of defendant's assertions within 10 days, the parties should then turn over any personal property belonging to the other within the following 10-day period. If a dispute arises as to whether a party is in possession of personalty belonging to the other, then the matter shall be referred to a referee. Concur—Buckley, P.J., Saxe, Ellerin, Nardelli and Williams, JJ.