T.I. v R.I. (2025 NY Slip Op 50115(U))

[*1]

T.I. v R.I.

2025 NY Slip Op 50115(U)

Decided on January 30, 2025

Supreme Court, Kings County

Sunshine, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2025
Supreme Court, Kings County

T.I., Plaintiff,

against
R.I., Defendant.

Index No. XXXXX

Jeffrey S. Sunshine, J.

The Court is called upon to determine, inter alia, whether to grant plaintiff's application to disqualify defendant's counsel from representing the defendant herein because defendant's counsel subsequently was retained by defendant's brother to represent the brother, a non-party herein, in a malicious prosecution action against the plaintiff-wife.
The parties were married in March 2014. This is the second divorce action between the parties. The prior action was commenced in 2015: that extremely contentious litigation continued until late-2018 when the Court issued an extensive written decision resolving all custody and financial issues between the parties (see R.I. v. T.I., 60 Misc 3d 1226(A) [Kings County, August 17, 2018]; see also R.I. v. T.I., 51 Misc 3d 1215(A) [Kings County, April 22, 2016]. After the trial decision was issued the parties notified the Court that they had reconciled. Given the issues in the case, the Court conducted a length allocution of the parties on their stipulation to discontinue the action.
Thereafter, plaintiff-wife commenced the instant divorce action on February 7, 2023. The defendant-husband filed a motion to dismiss and for summary judgment alleging, inter alia, that no divorce action could be maintained because the parties were allegedly not married. The Court issued a written decision and order in which, inter alia, the Court denied the defendant's application and that the plaintiff's cause of action for divorce was entitled to adjudication pursuant to DRL 12 (see T.I. v. R.I., 83 Misc 3d 800 [Kings County, March 20, 2024]).
There is one (1) child of the marriage: a nine (9) year old son. On September 9, 2024, the plaintiff-mother filed an order to show cause seeking the following relief:
A. Issuing a protective order pursuant to CPLR § 3101(a), directing that Defendant refrain from disclosing details of this litigation to third parties and sharing court documents and discovery with third parties (other than retained counsel or experts);
B. Disqualify Defendant's attorney, Tamara M. Harris, from representing Defendant in the above-entitled action;
C. Staying discovery pursuant to CPLR § 2201 pending the outcome of this motion; and
D. Granting Plaintiff such other and further relief as the Court deems just and proper.
The mother claims that for almost ten (10) years of her marriage with the father, he subjected her to multiple forms of abuse and harassment. Most prominently, she contends that the father's brother played a major role in his behavior towards her. She alleges that the brother encouraged the abuse and holds general misogynistic views and personal hostility towards her. [*2]The plaintiff-mother provides various allegations of the brother's participation in the abuse that occurred throughout her marriage. These allegations include the brother berating and harassing the mother, spreading rumors about her in the community, and verbally attacking and threatening her in public. Furthermore, the mother alleges that the father and his brother conspired to ensure any injuries she sustained from the abuse were not reported to law enforcement by local watch organizations where the mother sought help.
The mother contends that she had always feared that the brother would physically harm her and her son. In February 2020, the brother allegedly tried to kick the mother and push a chair at her while she was holding her son. Further, the mother asserts that her son was afraid to go to the paternal grandmother's house because the brother would slap his mouth and pull his ears. She alleges that when the brother was confronted about this, he stated that it was the best way to discipline a child. In August 2021, the mother claims that when her son was being watched by his paternal grandmother, the brother removed him from the home without the mother's permission. When the mother called for assistance from the local "watch" organizations, she claims they urged her not to call law enforcement and the brother eventually sent her son back with the father.
The mother alleges that the brother has utilized the court system to engage in groundless litigation with her over the past four years. She contends that the brother filed false reports against her with ACS for physically abusing her son on multiple occasions between 2019 through 2021, which were held to be baseless. Allegedly in December 2021, the brother re-opened a police report he had originally filed on behalf of two of his children, in which he accused the mother of physically attacking them. The mother asserts that these allegations were false and believes he did this in retaliation for an ACS case and criminal charges against the father. This resulted in the mother being arrested on February 28, 2022. She contends that even though the charges were dropped, it was a traumatic experience in which she believes was aimed to diminish her credibility.
On May 26, 2021, in Kings County Family Court, the mother was awarded a final two-year Order of Protection against the brother by the Hon. Kathleen C. Waterman. However, on March 7, 2022, the mother claims that the brother threatened her at a conference that was off-the-record in Kings County Family Court, which violated the Order of Protection issued by the Judge Hon. Kathleen C. Waterman. The mother reported the threat to the NYPD and the brother was arrested around March 30, 2023. The charges against the brother were ultimately dismissed by the DA. As a result, the mother and the brother settled the family offense case with mutual withdrawal of the petitions with prejudice.
On July 30, 2024, the brother sued the mother and her attorneys, who appear in this divorce, in a tort action for "malicious prosecution" and "negligent supervision." This allegedly violated the settlement agreement in the family offense case. The mother argues that since the brother was so deeply involved in the father's abuse toward not only her but also their son, any claims in the divorce and tort case are interconnected. She claims that any information that is produced in discovery for the divorce will be used to her disadvantage in the tort action. Additionally, the mother argues that by the father's attorney also representing his brother in the tort action, the attorney has taken advantage of her and her attorney.
The mother's attorney claims that it is prejudicial to the mother for the father's attorney to represent his brother in the tort action. She argues that this is significant because of the substantial overlap in the core issues of litigation as well as the father and his brother having [*3]shared interests. She further asserts that the tort lawsuit against the mother is frivolous and that there is a conflict of interest by the father's attorney representing both him and his brother in both actions.
The father's attorney argues that a conflict of interest does not exist in this case because her loyalty to her clients is not in jeopardy and that she does not have a duty of loyalty to the mother or her attorney. She asserts that the mother and her attorney has never been her client and they have never shared confidential information with her that would be protected by attorney-client privilege.
 DISCUSSION
Protective order
Pursuant to CPLR 3103 (a), "[t]he court may at any time on its own initiative, or on motion of any party or of any person from whom or about whom discovery is sought, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts."
While Domestic Relations Law 235 (1) prohibits a court employee from disseminating papers filed in a matrimonial action it does not place any prohibition on litigants. There is no prohibition in the Domestic Relations Law nor the CPLR barring matrimonial litigants from disclosing or disseminating their own documents or their spouse's documents in a matrimonial action. For a protective order to be issued, the party seeking such an order must make a "factual showing of 'unreasonable annoyance, expense, embarrassment, disadvantage, and other prejudice" (see Nunez v. Peikarian, 208 AD2d 670, 671 [2d Dept 2022]). The courts must balance the competing interests of the parties and the truth-finding goal of the discovery process when determining whether to issue a protective order (see Cascardo v. Cascardo, 136 A.D3d 729, 730 [2d Dept 2016].
Plaintiff-wife's request that this Court should direct that defendant-husband refrain from disclosing details of this litigation to third parties presents a conflict with his right to freedom of expression. "A prior restraint on speech is a law, regulation or judicial order that suppresses speech on the basis of the speech's content in advance of its actual expression" and "[a]ny imposition of prior restraint, whatever the form, bears a 'heavy burden of demonstrating justification for its imposition" (Karantinidis v Karantinidis, 186 AD3d 1502, 1503 [2d Dept 2020]) see also Kassenoff v Kessenoff, 213 AD3d 822, 824 [2d Dept 2023]). The moving party must "demonstrate that the speech sought to be restrained is 'likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest'" (id.). "An injunctive order issued in the area of First Amendment rights must be couched in the narrowest terms that will accomplish the pin-pointed objective permitted by constitutional mandate and the essential needs of the public order" (Karantinidis, supra at 1503 [2d Dept 2020]).
The Second Department in Kassenoff held that a Supreme Court order prohibiting the defendant from "communicating with any employee of the plaintiff's employer 'regarding the Plaintiff, ... the facts and circumstances of this divorce (in the broadest meaning of the terms), the facts and circumstances of the parties' marriage prior to the filing of this divorce, or the parties' children" was an unconstitutional prior restraint (see Kassenoff v Kassenoff, 213 AD3d 822, 824 [2d Dept 2023]). The Court determined that the restrictions placed upon defendant's [*4]communication with employees of the plaintiff's employer was not narrowly tailored to the exact needs of the case. The Court held that "the restriction prohibiting the defendant from discussing the children with any employee of the plaintiff's employer was not necessary to prevent professional reputational harm to the plaintiff or financial or emotional harm to the children" (id.).
The Court cannot prohibit defendant from disseminating his own or his spouse's documents and discovery with third parties that would be considered a component of a public trial (i.e. analogous to sitting in the back of the court room) (see generally Kenner v Kenner, 13 AD3d 52, 53 [1st Dept 2004]) The Appellate Division, First Department in Kenner held that "the IAS court abused its discretion by granting defendant a 'gag' order which enjoined plaintiff from disseminating to third persons any financial information about defendant" since "the order expired on the first day of trial, its only legitimate purpose would be to protect defendant's right to a fair trial, but there was no evidence that dissemination could pose a risk to such right" (id.)
Here, plaintiff-wife raises general allegations that the defendant-husband could disseminate her personal information to third parties because of the tenor of this contentious litigation. If a divorce being "contentious" were sufficient basis to impose a total "gag order" on parties in divorce actions many if not most contested divorce actions would result in "gag orders".
Disqualification of Defendant's Attorney
Plaintiff-wife seeks to disqualify defendant-husband's attorney for allegedly violating the Rules of Professional Conduct. It is well-established that the disqualification of an attorney is generally a matter resting within the sound discretion of the court (Cohen v Cohen, 125 AD3d 589, 589 [2 Dept.,2015]; see also Jacobs v Parker, 94 AD3d 919 [2 Dept.,2012]). A party requesting the disqualification of his or her opponent's lawyer must demonstrate: "(1) the existence of a prior attorney-client relationship between the moving party and opposing counsel, (2) that the matters involved in both representations are substantially related, and (3) that the interests of the present client and former client are materially adverse" (see Gabel v Gabel, 101 AD3d 676, 676 [2d Dept 2012]).
Further, the rule of disqualification safeguards a client's secrets and confidences by eliminating the possibility that they will subsequently be used against the client in related litigation. This preventative mechanism alleviates clients' concerns that information shared in confidence might eventually be used to their disadvantage, which, as a result "fosters the open dialogue between lawyer and client that is deemed essential to effective representation" (Tekni-Plex, Inc., 89 NY2d at 131, 651 N.Y.S.2d 954, 674 N.E.2d 663).
The Rules of Professional Conduct, 22 NY ADC 1200, provides as follows as to confidentiality of information:
Rule 1.6: Confidentiality of information.
(a) A lawyer shall not knowingly reveal confidential information, as defined in this Part, or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person, unless:
(1) the client gives informed consent, as defined in Rule 1.0(j);
(2) the disclosure is impliedly authorized to advance the best interests of the client and is either reasonable under the circumstances or customary in the professional community; or
(3) the disclosure is permitted by paragraph (b).
"Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential. "Confidential information" does not ordinarily include (i) a lawyer's legal knowledge or legal research or (ii) information that is generally known in the local community or in the trade, field or profession to which the information relates.
(b) A lawyer may reveal or use confidential information to the extent that the lawyer reasonably believes necessary:
(1) to prevent reasonably certain death or substantial bodily harm;
(2) to prevent the client from committing a crime;
(3) to withdraw a written or oral opinion or representation previously given by the lawyer and reasonably believed by the lawyer still to be relied upon by a third person, where the lawyer has discovered that the opinion or representation was based on materially inaccurate information or is being used to further a crime or fraud;
(4) to secure legal advice about compliance with these Rules or other law by the lawyer, another lawyer associated with the lawyer's firm or the law firm;
(5)
(i) to defend the lawyer or the lawyer's employees and associates against an accusation of wrongful conduct; or
(ii) to establish or collect a fee; or
(6) when permitted or required under these Rules or to comply with other law or court order.
(c) A lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure or use of, or unauthorized access to, information protected by Rule 1.6, 1.9(c), or 1.18(b).
The Rules of Professional Conduct, 22 NY ADC 1200, provides as follows as to conflict of interests regarding current clients:
Rule 1.7: Conflict of interest: current clients.
(a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
(1) the representation will involve the lawyer in representing differing interests; or
(2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.
The Rules of Professional Conduct, 22 NY ADC 1200, provides as follows as to duties to former clients:
Rule 1.9: Duties to former clients. "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing" (Rule 1.9 [a]). It further provides as relevant here that a lawyer "who has formerly represented a client in a matter ... shall not thereafter ... use confidential information of the former client ... to the disadvantage of the former client ...; or ... reveal confidential information of the former client" (Rule 1.9 [c] [1], [2]).
The Court of Appeals has held that "[a]ttorneys owe fiduciary duties of both confidentiality and loyalty to their clients" (Tekni-Plex, Inc. v. Meyner & Landis, 89 NY2d 123, 130, 651 N.Y.S.2d 954, 674 N.E.2d 663 [1996], rearg denied 89 NY2d 917, 653 N.Y.S.2d 921, 676 N.E.2d 503 [1996]; see Kassis v. Teacher's Ins. & Annuity Assn., 93 NY2d 611, 615-616, 695 N.Y.S.2d 515, 717 N.E.2d 674 [1999]). "Side switching" directly addresses the principles of maintaining loyalty to the first client and protecting that client's confidential information (see Kassis, 93 NY2d at 616, 695 N.Y.S.2d 515, 717 N.E.2d 674). However, conclusory allegations of "intimate knowledge" of business, personal and financial matters are not always sufficient to establish a substantial relationship between prior and current litigation warranting disqualification (see Calandriello v Calandriello, 32 AD3d 450 [2 Dept.,2006]). 
In Matter of Nenninger v Kelly, 140 AD3d 961[2d Dept 2016], a Family Court proceeding for an upward modification of the father's child-support obligations, the mother moved to "disqualify the father's attorney on the ground that the father's attorney represented the mother's current husband in his own child support matters, in the course of which the father's attorney obtained confidential information related to the mother's divorce from the father and her finance[s]." The Appellate Division, Second Department, affirmed the Support Magistrate's denial of the mother's motion for disqualification of the father's counsel holding that "given that the [family-court] proceeding was capable of being resolved by a simple reading of the petition and stipulation, there was no actual prejudice or substantial risk thereof to the mother[,] since none of the information purportedly obtained by the father's counsel through her representation of the mother's current husband [in the divorce action] was at issue" (id. at 964).
At oral argument, plaintiff's counsel conceded, in effect, that plaintiff's concern is that defendant's counsel agreed to represent the defendant's brother in a malicious prosecution action against plaintiff and plaintiff's counsel that was commenced after this divorce action was commenced is really an effort by defendant-husband in this litigation to "intimidate" plaintiff's counsel into not representing the plaintiff. She further contends that the nexus of defendant's counsel representing the defendant may give the defendant's brother an "advantage" in the later commenced action because she will have information from this litigation that she can then share with the defendant's brother in the litigation where she represents him because he is suing the plaintiff. 
It appears from the record before the Court that plaintiff lacks standing to assert a conflict-of-interest basis for disqualification of defendant's counsel in this action. Essentially, [*5]plaintiff alleges that defendant's counsel may breach her fiduciary duty to defendant by representing defendant's brother because she may share confidential information from defendant's litigation with defendant's brother in his litigation. Additionally, plaintiff asserts that she feels intimidated by defendant's counsel representing defendant in this action and defendant's brother in another action in a subsequently filed action against plaintiff and plaintiff's counsel. 
There is no allegation that defendant's counsel ever represented the plaintiff herein so there can be no basis for plaintiff to allege conflict of interest against defendant's counsel. There is also no standing for plaintiff in this action to assert any conflict of interest that may exist between defendant and defendant's brother both hiring the same attorney to represent them in separate actions even if those actions are both against the same party. As such, there is no basis for plaintiff to argue disqualification based upon conflict of interest. 
Furthermore, plaintiff's contention that even if there is no basis for disqualification for conflict of interest the Court should remove defendant's counsel because there is an "appearance of impropriety" because defendant's counsel represents multiple parties who are adversarial to plaintiff. There is no allegation that the interests of the defendant and those of his brother are conflicting nor would that be relevant to plaintiff's application because she does not have standing to assert any such conflict of interest.
In Matter of Nenninger v Kelly, 140 AD3d at 963, the Appellate Division, Second Department held that:
 ...the Family Court also properly denied the mother's objections to so much of the Support Magistrate's order as denied that branch of her motion which was to disqualify the father's attorney. "Absent actual prejudice or a substantial risk thereof, the appearance of impropriety alone is not sufficient to require disqualification of an attorney" (Matter of Lovitch v. Lovitch, 64 AD3d 710, 711 [2009]). "A party's entitlement to be represented in ongoing litigation by counsel of his or her own choosing is a valued right which should not be abridged absent a clear showing that disqualification is warranted, and the movant bears the burden on the motion" (Campolongo v. Campolongo, 2 AD3d 476, 476 [2003] [citation omitted]; see Matter of Aaron W. v Shannon W., 96 AD3d 960, 962 [ 2 Dept.,2012]).
Furthermore, in Sentry at QB, LLC v Wu, 219 AD3d 649, 650 [2 Dept.,2023], the Appellate Division, Second Department held that:
"The basis of a motion to disqualify an attorney due to an alleged conflict of interest 'is an allegation of a breach of a fiduciary duty owed by an attorney to a current or former client' " (Ellison v. Chartis Claims, Inc., 142 AD3d 487, 487, 35 N.Y.S.3d 922, quoting Ogilvie v. McDonald's Corp., 294 AD2d 550, 552, 742 N.Y.S.2d 897). " 'When the firm sought to be disqualified ha[s] never represented the moving party, that firm owe[s] no duty to that party. And it follows that if there is no duty owed there can be no duty breached' " (Ellison v. Chartis Claims, Inc., 142 AD3d at 487—488, 35 N.Y.S.3d 922, quoting Rowley v. Waterfront Airways, Inc., 113 AD2d 926, 927, 493 N.Y.S.2d 828). Since the defendants-appellants-respondents were neither a present nor a former client of the Silverman law firm, they lacked standing to seek disqualification based upon a conflict of interest (see Ellison v. Chartis Claims, Inc., 142 AD3d at 487—488, 35 N.Y.S.3d 922).
Here, plaintiff failed to identify an ethical or disciplinary rule precluding defendant's counsel from representing the husband in the divorce action and the husband's brother in the malicious-prosecution action and the Court is not aware of any such prohibition. The fact that both clients are in adversarial positions to the plaintiff herein is not, in and of itself, a basis for disqualification. Plaintiff has also failed to demonstrate "actual prejudice or a substantial risk thereof" because — assuming it to be true — the resolution of the malicious-prosecution action does not (and should not) require use of information from the divorce action.
It appears that plaintiff's remaining allegations are, essentially, based on a scenario where she assumes that defendant's counsel will engage in future ethical violations and that she is attempting to assert a conflict of interest claim that may belong to defendant; however, at this time there is no indication that the interests of defendant and his brother are at odds and, even if such were the case, that question is not before this Court. 
As detailed herein above, the legally protected confidential information in this matrimonial action that plaintiff asserts she is worried that defendant's counsel will "leak" to defendant's brother is already protected: copies of confidential records such as forensic reports, medical records, Court Ordered Investigation reports, reports from the Administrative of Children Services (ACS) are protected and any other documents related to the children that are protected are not permitted to be released absent court order. Attorneys sign affirmations that dictate how those confidential records are maintained and, upon conclusion of a case or an attorney no longer being the attorney of record those confidential documents must be returned to the Court. The parties' counsel shall sign that affirmation forthwith.[FN1]
This Court will not disqualify defendant's counsel preemptively based on an unsubstantiated allegation that counsel may violate his or her ethical and professional obligations in the future. The application to disqualify defendant's counsel is denied.
These allegations alone are not a legal basis to deprive defendant of his right to be represented by an attorney of his choosing in this litigation: plaintiff has not made a sufficient showing to meet her burden to prove that disqualification of defendant's counsel in this action is warranted.
Staying Discovery
Plaintiff requested that this Court stay the discovery in the matrimonial action until such time as the Order to Show Cause is decided. Inasmuch as the Court has issued a decision on this motion the issue is moot.
Counsel shall contact the Court to schedule a date for the hearing on the order of protection application and oral argument on any extant motions.

 CONCLUSION
Plaintiff's order to show case [motion seq. No.8] is denied to the extent.
Any relief requested but not granted above is denied.
ENTER:
__________________________
HON. JEFFREY S. SUNSHINE
J. S. C.

Footnotes

Footnote 1:A copy of the affirmation will be provided by the part clerk and counsel shall complete them and return them forthwith.