**In re I SUCCESSOR CORP., et al., (f/k/a Interliant, Inc., et al.), Debtor.**

**Post–Confirmation Committee of Unsecured Creditors of I Successor Corp., et al. (f/k/a Interliant, Inc., et al.), Plaintiff,**

v.

**The Feld Group, Inc.; Mobius VI, LLC; Mobius Technology Ventures VI, LP; Contrado, Inc.; Charterhouse Group, Inc. (f/k/a Charterhouse Group, International, Inc.); Charterhouse Equity Partners III, L.P.; Softbank Technology Ventures IV, L.P.; Softbank Technology Advisors Fund, L.P.; EYT, Inc.; Telephonetics Inc. (f/k/a L & D Messaging, Inc.); Stephen Maggs; Bradley Feld; Bruce Graham; Charles Feld; Jay Gates; Thomas**

Dircks; Merrill Halpern; Patricia Riley; Charles Lax; Francis Alfano; Herbert Hribar; Leonard Fassler; David Walke; Howard Diamond; James M. Lidestri; and Stephen Munroe, Defendants.

Bankruptcy Nos. 02 B 23150–23151ASH, 02 B 23153ASH, 02 B 23155ASH, 02 B 23158–23159ASH, 02 B 23160–23163ASH, 02 B 23166, 02 B 23168ASH. Adversary No. 04–8806A.

United States Bankruptcy Court, S.D. New York.

March 10, 2005.

Robinson & Cole LLP, by Christopher J. Major, William J. Kelleher III, Steven H. Gross, New York City, for Plaintiff.

Proskauer Rose LLP, by Michael T. Mervis, Richard M. Goldstein, Steven C. Krane, New York City, for all Defendants except Telephonetics, Inc. and Stephen Maggs.

Todtman, Nachamie, Spizz & Johns, PC, by Matthew E. Hoffman, New York City, for Telephonetics, Inc. and Stephen Maggs.

## DECISION AND ORDER ON MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

ADLAI S. HARDIN, JR., Bankruptcy Judge.

Plaintiff, the Post–Confirmation Committee of Unsecured Creditors ("plaintiff") of I Successor Corporation, et al. ("I Successor") (f/k/a Interliant, Inc., et al. and referred to herein as "Interliant" or "debtor"), commenced this adversary proceeding on behalf of debtor pursuant to Section 11.07 of debtor's Third Amended Plan of Liquidation, which authorizes plaintiff to prosecute debtor's actions post-confirmation. Proskauer Rose, LLP ("Proskauer") represents all defendants in this adversary proceeding except Telephonetics, Inc. and Stephen Maggs.[1] Plaintiff moved to disqualify Proskauer from representing any defendants in this adversary proceeding due to an alleged conflict of interest created by work Proskauer previously did for Interliant. For the reasons set forth below, the motion is granted.

*Jurisdiction*

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the standing order of reference to bankruptcy judges signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. This is a core proceeding under 28 U.S.C. § 157(b).

*Background*

Interliant filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on August 5, 2002. The debtor sold substantially all of its assets to Intrepid Acquisition Corporation on May 16, 2003 and June 6, 2003 for $7 million with the approval of this Court. Section 3.2 of the Asset Purchase Agreement provides that "[t]he Purchaser shall not be liable for any liabilities of Sellers other than the Assumed Liabilities and Purchaser shall not be deemed, considered or held to be a successor to Sellers." That Section further stated that the "[p]urchaser is expressly not assuming any liability or obligation for . . . [c]laims which arose or were incurred prior to the Petition Date, or which are based on events, transactions or occurrences prior to the Petition Date." Pursuant to Section 4.9 of the agreement, Interliant changed its name to I Successor Corporation.

On March 12, 2004, this Court entered an order confirming debtor's Third Amended Plan of Liquidation. In addition to providing for the liquidation of debtor's existing assets and distribution of cash to

---

1. Therefore, Proskauer represents the Feld Group, Inc.; Mobius VI, LLC; Mobius Technology Ventures VI, LP; Contrado, Inc.; Charterhouse Group, Inc. (f/k/a Charterhouse Group, International, Inc.); Charterhouse Equity Partners III, L.P.; Softbank Technology Ventures IV, L.P.; Softbank Technology Advisors Fund, L.P.; EYT, Inc.; Bradley Feld; Bruce Graham; Charles Feld; Jay Gates; Thomas Dircks; Merrill Halpern; Patricia Riley; Charles Lax; Francis Alfano; Herbert Hribar; Leonard Fassler; David Walker; Howard Diamond; James M. Lidestri; and Stephen Munroe.

creditors, the confirmed plan, in section 11.07, authorized plaintiff to prosecute debtor's preference, fraudulent conveyance and post-petition transfer claims after confirmation. Any proceeds obtained by plaintiff on Debtors' behalf would be distributed according to the plan.

Pursuant to that authorization, plaintiff brought this adversary proceeding on August 4, 2004. Plaintiff alleges in the First, Third, and Fourth Claims for relief that Interliant made improper transfers of cash without fair consideration to The Feld Group, Inc. ("Feld Group") recoverable under sections 548(a)(1)(B), 547(b), and 544 of the Bankruptcy Code and under section 273 through 275 of New York Debtor and Creditor Law. Bradley Feld, Charles Feld, and Bruce Graham are the principal shareholders of the Feld Group in addition to being former officers or directors of Interliant. Plaintiff alleges that the Feld Group benefited from the allegedly improper transfer as the direct recipient but also that Bradley Feld, Charles Feld, and Bruce Graham benefited "[b]y virtue of their control of, and ownership interest in" the Feld Group.

Plaintiff alleges in the Second, Third, and Fifth claims for relief that Debtors made improper transfers of cash to Contrado, Inc. ("Contrado") recoverable under sections 548(a)(1)(B), 547(b), and 544 of the Bankruptcy Code and under section 273 through 275 of New York Debtor and Creditor Law. Mobius VI, LLC and Mobius Technology Ventures VI (collectively, "Mobius") and the Feld Group are the principal shareholders in Contrado, and Bradley Feld is a director of Mobius. Plaintiff alleges that "[d]efendants Bruce Graham, Bradley Feld, and Charles Feld are the directors of Contrado, and as such exercise control over Contrado." Again plaintiff alleges not only that Contrado benefited directly from the transfers but also that Bruce Graham, Bradley Feld, and Charles Feld benefited "[b]y virtue of their control of, and ownership interest in" Contrado.

In the Sixth Claim for relief, plaintiff alleges that Interliant sold shares of EYT, Inc. ("EYT") back to EYT for less than fair consideration giving rise to damages recoverable under section 544 of the Bankruptcy Code and sections 273 through 275 of New York Debtor and Creditor Law. Charterhouse Group, Inc. (f/k/a Charterhouse Group, International, Inc.), Charterhouse Equity Partners III, L.P., SOFTBANK Technology Ventures IV, L.P., SOFTBANK Technology Advisors Fund L.P. (together with SOFTBANK Technology Ventures IV, L.P., "SOFTBANK"), and Mobius were the other shareholders of EYT. Thomas Dircks, Jay Gates, and Merrill Halpern are officers of Charterhouse Group, Inc. in addition to being former officers of Interliant. Bradley Feld and Charles Lax are partners in SOFTBANK in addition to being former directors of Interliant. Plaintiff alleges that "[b]y virtue of their control of, and ownership interest in, EYT, Defendants Charterhouse, SOFTBANK, Thomas Dircks, Jay Gates, Merrill Halpern, Bradley Feld, and Charles Lax each benefited from Interliant's sale of EYT stock."

In the Tenth Claim for relief, plaintiff alleges that the director and officer defendants breached their fiduciary duties. Plaintiff alleges that the directors and officers did so by "[e]ntering into multiple transactions with interested Directors and Officers and/or entities that were controlled by interested Directors and Officers, which were not in the best interests of Interliant and/or not properly authorized by Interliant's Board." Plaintiff also alleges that the directors and officers breached their duty by "[f]ailing to exercise prudent and informed business deci-

sions with requisite care, including but not limited to, failing to engage in minimally adequate due diligence before authorizing acquisitions and failing to obtain fairness opinions in connection with transactions."

In essence, then, plaintiff alleges a pattern of conduct extending over a period of time to funnel the corporation's money or property to the defendant director and officers or entities controlled by them in breach of their fiduciary duty. Claim Eleven mirrors the allegations in Claim Ten except that in Claim Eleven plaintiff alleges a breach of fiduciary duty by the director and officer defendants to Interliant's creditors.

Proskauer represents all defendants, corporate and individual, in Claims One through Six. Proskauer also represents the director and officer defendants in Claims Ten and Eleven except Stephen Maggs.[2]

On November 11, 2005, plaintiff brought this motion to disqualify Proskauer from representing any defendants in this adversary proceeding. Plaintiff alleges in its motion to disqualify, and defendants admit on this motion, that Proskauer represented Interliant in the acquisitions of Soft Link, Inc. and reSOURCE Partners, Inc. in February of 2000. Plaintiff also alleges that Proskauer represented Interliant in NaviSite's proposed purchase of Interliant's assets in the Spring of 2002 prior to Interliant's bankruptcy filing. Defendants acknowledge that Proskauer did work relating to the NaviSite proposal but allege that the work was related to the regulatory disclosure implications of the proposed transaction and did not relate to the merits of it.

Plaintiff argues that Proskauer's prior work for Interliant on these transactions is substantially related to Claims Ten and Eleven in the current adversary proceeding because they are specifically included in those claims in plaintiff's complaint. Plaintiff also argues that because the transactions alleged in Claims One through Six are incorporated into Claims Ten and Eleven along with the transactions on which Proskauer worked, Proskauer's prior work is substantially related to the transactions in Claims One through Six because the three transactions together with the transactions in Claims One through Six are part of the ongoing scheme that constitutes the breaches of fiduciary duty by the directors and officers alleged in Claims Ten and Eleven.

Defendants contend that, because Interliant sold all of its assets and I Successor is not an ongoing concern, no attorney-client privilege passed from Interliant to the post-petition entity, I Successor. Defendants argue that even if Proskauer is disqualified from representing the defendant officers and directors that it should be able to represent the corporate defendants on Claims One through Six because Proskauer never worked on any of the transactions in those claims. Defendants also argue that Proskauer cannot be conflicted from representing any parties on Claim Twelve because Proskauer never represented the Creditors' Committee and Claim Twelve is based on the breach of fiduciary duty to the creditors and not to Interliant. Finally, defendants assert that there could be no expectation of confidentiality to the defendant directors and officers of Interliant, so Proskauer cannot be disqualified in any case.

Plaintiff has also implied that Proskauer should be disqualified because plaintiff must subpoena Proskauer attorneys to

---

**2.** In Claims Seven through Nine, plaintiff alleges transfers of both a company and cash without fair consideration to a corporate entity, Telephonetics, or a former officer and director of Interliant, Stephen Maggs, neither of which is represented by Proskauer.

serve as witnesses in this adversary proceeding. However, plaintiff never fully briefs this legal issue. Defendants argue that Proskauer can only be disqualified under the so-called "lawyer-witness rule" if the testimony of Proskauer's attorneys will be necessary or will likely be prejudicial to defendants. Defendants assert that plaintiff has not made any allegations of either.

## Discussion

### I. The "substantial relationship" test and Canons 4, 5 and 9

#### A. General comments on disqualification

 Because motions to disqualify attorneys can be tactically motivated, cause delay and additional expense, and disrupt attorney-client relationships, the movant must meet a high standard of proof to disqualify the movant's former counsel. *Gov't of India v. Cook Ind., Inc.*, 569 F.2d 737, 739 (2d Cir.1978); *Red Ball Interior Demolition Corp. v. Palmadessa*, 908 F.Supp. 1226, 1239 (S.D.N.Y.1995); *Stratavest Ltd. v. Rogers*, 903 F.Supp. 663, 666 (S.D.N.Y.1995); *United States Football League v. Nat'l Football League*, 605 F.Supp. 1448, 1452–53 (S.D.N.Y.1985). The right of a client to choose his counsel "must be balanced against the need to maintain the highest standards of the profession." *Gov't of India*, 569 F.2d at 739. *See also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983); *Saftler v. Gov't Employees Ins. Co.*, 95 A.D.2d 54, 465 N.Y.S.2d 20, 22 (App.Div.1983).

However, the courts have made clear that "any doubt is to be resolved in favor of disqualification." *Hull v. Celanese*, 513 F.2d 568, 571 (2d Cir.1975). *See also Clark v. Bank of New York*, 801 F.Supp. 1182, 1197 (S.D.N.Y.1992) ("[A]lthough doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' be-

fore a lawyer is disqualified." (internal citations omitted)); *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y.1991) ("[A]lthough doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." (internal citations omitted)); *Tese–Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*, 289 B.R. 563, 583 (Bankr. S.D.N.Y.2003) ("While '[a]ny doubt is to be resolved in favor of disqualification,' the Court recognizes that in considering a motion to disqualify, a court must take into account 'a client's right freely to choose his counsel...which...must be balanced against the need to maintain the highest standards of the profession.'" (internal citations omitted)).

The New York State Bar Association has adopted as the Lawyer's Code of Professional Responsibility the American Bar Association's Code of Professional Conduct, and both state and federal courts in this Circuit have recognized its canons as appropriate guidelines for the professional conduct of the bar. *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1386 (2d Cir.1976); *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 129 n. 2 (2d Cir.1976); *Papyrus Tech. Corp. v. New York Stock Exchange, Inc.*, 325 F.Supp.2d 270, 276 (S.D.N.Y. 2004); *Stratavest Ltd. v. Rogers*, 903 F.Supp. 663, 666 (S.D.N.Y.1995).

Three Canons in the Code of Professional Responsibility are relevant here—Canons 4, 5 and 9. Before turning to the Canons, however, it is useful to articulate the "substantial relationship" test governing disqualification at the instance of former clients.

#### B. Disqualification under the "substantial relationship" test

 Disqualification is only appropriate when continued representation implicates

a clear violation of the Code of Professional Responsibility. *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir.1981); *Universal City Studios, Inc. v. Reimerdes*, 98 F.Supp.2d 449, 455 (S.D.N.Y.2000). *See also Bd. of Educ. of the City of New York v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Felix v. Balkin*, 49 F.Supp.2d 260, 268 (S.D.N.Y.1999).

In a world of mega clients and mega law firms, it will inevitably happen that lawyers are called upon to represent an adversary of a former client in a controversy with the former client. Business considerations aside, such a representation will, as a practical matter, entail no ethical issue if the prior representation of the former client had nothing to do with the present controversy. The organized bar has long rejected the notion that a past representation should forever bar any subsequent representation adverse to a former client.

To define the line for disqualification on motion of a former client, the courts established the "substantial relationship" test under which disqualification may, indeed must, be granted, but only where the present controversy is substantially related to the former representation. *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F.Supp. 265, 268 (S.D.N.Y.1953); *Saftler v. Gov't Employees Ins. Co.*, 95 A.D.2d 54, 465 N.Y.S.2d 20, 22 (App.Div.1983). The "substantial relationship" test is codified in Disciplinary Rule 5–108(A)(1) (quoted below) and has been confirmed in numerous decisions. *See, e.g., Papyrus Tech. Corp. v. New York Stock Exchange, Inc.*, 325 F.Supp.2d 270, 276–77 (S.D.N.Y.2004); *Schwed v. General Electric Co.*, 990 F.Supp. 113, 115 (N.D.N.Y.1998); *Stratavest Ltd. v. Rogers*, 903 F.Supp. 663, 666 (S.D.N.Y.1995); *Solow v. W.R. Grace & Co.*, 83 N.Y.2d 303, 308–09, 313, 610 N.Y.S.2d 128, 632 N.E.2d 437 (1994).

■ Establishing that there is a substantial relationship between the prior representation and the present controversy is sufficient for disqualification without requiring the movant to show actual prejudice, because compelling a party to reveal "the actual confidential matters previously entrusted to the attorney and their possible value to the present client would tear aside the protective cloak drawn about the lawyer-client relationship." *T.C. Theatre Corp.*, 113 F.Supp. at 268.

### C. Canon 4: A lawyer's duty of confidentiality

Canon 4 is concerned with a lawyer's duty of confidentiality to clients and former clients. Canon 4 provides that "[a] lawyer should preserve the confidences and secrets of a client." The importance of this duty is expressed in Ethical Consideration 4–1, which states that "[a] client must feel free to discuss anything with his or her lawyer and a lawyer must be equally free to obtain information beyond that volunteered by the client." This ethical duty "not only facilitates the full development of facts essential to proper representation of the client but also encourages non-lawyers to seek early legal assistance." *Id.*

The statutory attorney-client privilege and the ethical requirement that a lawyer or law firm maintain and safeguard client confidences and secrets and scrupulously refrain from using client information to the detriment of former clients have long been recognized as crucial to the integrity of the attorney-client relationship.

### D. Canon 5: A lawyer's duty of loyalty

■ Canon 5 is concerned with the lawyer's duty of loyalty to clients and former

clients. The duty of loyalty is related to but separate and distinct from the duty to preserve confidences. Canon 5 states that "[a] lawyer should exercise independent professional judgment on behalf of a client." Of particular relevance here, Disciplinary Rule 5–108 of the Code, promulgated pursuant to Canon 5 states, in pertinent part:

A. Except as otherwise provided ..., a lawyer who has represented a client in a matter shall not, without the consent of the former client after full disclosure:

1. Thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

2. Use any confidences or secrets of the former client except as permitted by DR 4–101 [1200.19](C) or when the confidence or secret has become generally known.

This Disciplinary Rule is mandatory, as indicated by the use of the words "shall not."

Defendants baldly assert, with no supporting citation, that "in the Second Circuit, a lawyer has no 'duty of loyalty' to a former client" and that "the only duty owed to a former client is the ongoing duty to preserve client confidences," which "is subsumed within the 'substantial relationship test.'" This Court unequivocally rejects that postulate. There are two distinct duties of confidentiality and loyalty to prior clients. The duties of confidentiality and loyalty are defined by two distinct canons, Canons 4 and 5. The critical Disciplinary Rule here, DR 5–108(A), codifying the substantial relationship test, was actually promulgated under Canon 5, which defines the duty of loyalty. Only the second subparagraph of that Rule specifically deals with confidentiality. The Second

Circuit made clear in *In re "Agent Orange" Prod. Liability Litig.*, 800 F.2d 14 (2d Cir.1986), that "an attorney owes a duty of loyalty to his client" and that "[t]hese obligations do not necessarily end when the attorney-client relationship ends." *Id.* at 17. *See also Arifi v. de Transport du Cocher, Inc.*, 290 F.Supp.2d 344, 348 (E.D.N.Y.2003) ("The duty of loyalty that runs from an attorney to a client does not necessarily end when the formal attorney-client relationship ends because the attorney owes a 'duty of continuing loyalty' to his former client." (internal citations omitted)); *Schwed v. General Electric Co.*, 990 F.Supp. 113, 115 (N.D.N.Y. 1998) ("[A]n attorney has a continuing duty of loyalty to a client which constrains the attorney from representing another party whose interests are adverse to the interests of the former client."); *In re Jaeger*, 213 B.R. 578, 587 (Bankr.C.D.Cal. 1997) ("[T]he attorney has a duty of loyalty to the former client which prohibits the attorney from undertaking a representation adverse to a former client in a matter substantially related to the prior representation of that client."); *New York v. McLaughlin*, 174 Misc.2d 181, 662 N.Y.S.2d 1019, 1022 (Sup.Ct.1997) ("A conflict of interest exists when an attorney's current representation is impaired by the loyalty he owes a former client.").

Contrary to defendants' assertion, numerous courts have held that the substantial relationship test effectuates *both* the duty of loyalty and the duty of confidentiality. In the seminal case setting forth the substantial relationship test, *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, Judge Weinfeld of the Southern District of New York held that only through the substantial relationship test "can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." 113

F.Supp. at 268–69. *See also Damron v. Herzog,* 67 F.3d 211, 215 (9th Cir.1995), *cert. denied,* 516 U.S. 1117, 116 S.Ct. 922, 133 L.Ed.2d 851 (1996) ("[T]he duty of loyalty also continues with respect to those matters substantially related to that representation."); *Felix v. Balkin,* 49 F.Supp.2d 260, 268 (S.D.N.Y.1999) (holding that attorneys should be disqualified where the substantial relationship test is met "in order to assure that the confidentiality of the attorney-client relationship and the loyalty between attorney and client are preserved"); *Selby v. Revlon Consumer Prod. Corp.,* 6 F.Supp.2d 577, 582 (N.D.Tex.1997) (holding that the substantial relationship test "also concerns the duty of loyalty to a former client"); *PGH Int'l, Inc. v. Gabor Shoes AG (In re PGH Int'l Inc.),* 222 B.R. 401, 408 (Bankr.D.Conn.1998) (holding that the substantial relationship test "embodies a broader concept [than the rule of confidentiality]—that of continuing fidelity to a former client—a duty of loyalty"); *Kassis v. Teacher's Ins. and Annuity Assoc.,* 93 N.Y.2d 611, 616, 695 N.Y.S.2d 515, 717 N.E.2d 674 (1999) ("[S]uch 'side switching' clearly implicates the policies both of maintaining loyalty to the first client and of protecting that client's confidences."); *New York v. Liuzzo,* 167 A.D.2d 963, 562 N.Y.S.2d 303, 304 (App.Div.1990) ("The duty of loyalty to a former client is broader than the attorney-client privilege and an attorney is not free to attack a former client with respect to the subject matter of the earlier representation even if the information used in the attack comes from sources other than the former client."). The New York Court of Appeals held in *Tekni–Plex, Inc. v. Meyner and Landis,* 89 N.Y.2d 123, 651 N.Y.S.2d 954, 674 N.E.2d 663 (1996), that "[a]ttorneys owe fiduciary duties of both confidentiality and loyalty to their clients." *Id.* at 130, 651 N.Y.S.2d 954, 674 N.E.2d 663. The Court held that "[i]n accordance with these

duties, the Code precludes attorneys from representing interests adverse to a former client on matters substantially related to the prior representation." *Id.*

■ As confidentiality is critical to the attorney-client relationship and privilege, so also is the proscription against professional apostasy. A client has the right to know that an attorney will not change sides and become adverse on a matter substantially related to a matter previously entrusted to that attorney. The duty of loyalty has very practical significance. A client's reliance on the attorney's future loyalty is just as essential to foster a relationship of trust and confidence as is the attorney-client privilege. Integral to that relationship is the client's entitlement and expectation that, after the engagement is concluded, the attorney will be cooperative and forthcoming in responding to the client's needs for documents or information in a subsequent substantially related controversy. That entitlement and expectation is confounded if the attorney is at liberty to change sides and represent the former client's adversary, thereby assuming a new duty to the adversary in conflict with that owed to the former client. Swift cooperation will be inhibited by an attorney's divided loyalty where the attorney now sits across the table from a former client on a substantially related matter. Just as a client's willingness to be forthcoming with information may be inhibited by the absence of the attorney-client privilege, the societal objective of openness and candor may be impaired if a client knows that courts have written out of existence the duty of loyalty prescribed in the Canons. Cynicism and diminution of public confidence in the legal profession is fostered when the duty of loyalty is swept aside.

### E. *Canon 9: The appearance of impropriety*

Canon 9, often overlooked by commentators and practitioners, is important. Canon 9 dictates that "[a] lawyer should avoid even the appearance of professional impropriety." Ethical Consideration 9–1 states that "[c]ontinuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system." Canon 9 "reflects the bar's concern that some conduct which is in fact ethical may appear to the layman as unethical and thereby erode public confidence in the judicial system and the legal profession." *Liu v. Real Estate Inv. Group, Inc.*, 771 F.Supp. 83, 87 (S.D.N.Y. 1991).

■■■ The mere appearance of impropriety is not sufficient for disqualification without the threat that the proceeding will be tainted.[3] *Liu v. Real Estate Inv. Group, Inc.*, 771 F.Supp. at 87; *Dinger v. Gulino*, 661 F.Supp. 438, 445 (E.D.N.Y. 1987); *United States Football League v. Nat'l Football League*, 605 F.Supp. at 1452; *Yaretsky v. Blum*, 525 F.Supp. 24, 30 (S.D.N.Y.1981). There are two circumstances that raise that specter: (1) when an attorney concurrently represents adverse interests, and (2) when an attorney successively represents adverse interests. *Tisby v. Buffalo General Hosp.*, 157 F.R.D. 157, 165 (W.D.N.Y.1994); *Liu v. Real Estate Inv. Group, Inc.*, 771 F.Supp. at 87; *Dinger v. Gulino*, 661 F.Supp. at 445; *United States Football League v.*

*Nat'l Football League*, 605 F.Supp. at 1452.

■■■ Canon 9's prohibition against the appearance of impropriety sets an important standard by which an attorney may be disqualified. Because an attorney must avoid the appearance of impropriety, a party moving for disqualification need not demonstrate by direct evidence that there has been or will be a breach of a confidential relationship. *See T.C. Theatre Corp.*, 113 F.Supp. at 268; *Strianese v. Amalgamated Cordage Corp.*, 201 A.D.2d 977, 607 N.Y.S.2d 834, 835 (App.Div.1994); *Nemet v. Nemet*, 112 A.D.2d 359, 491 N.Y.S.2d 810, 811 (App.Div.1985); *Narel Apparel Ltd., Inc. v. American Utex Int'l*, 92 A.D.2d 913, 460 N.Y.S.2d 125, 128 (App. Div.1983) ("It is not essential that there be proof positive that confidential information will necessarily be disclosed in the course of the litigation."). To the contrary, "[b]y mandating disqualification irrespective of any actual detriment—that is, 'even when there may not, in fact, be any conflict of interest'—the ['substantial relationship' test] also avoids any suggestion of impropriety on the part of the attorney." *Tekni–Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d at 131, 651 N.Y.S.2d 954, 674 N.E.2d 663. *See also Paul E. Iacono Structural Engineer, Inc. v. Humphrey*, 722 F.2d 435, 440 (9th Cir.1983); *Meyerhofer v. Empire Fire and Marine Ins. Co.*, 497 F.2d 1190, 1196 (2d Cir.1974) ("[A] strict prophylactic rule [must] be applied in these cases to ensure that a lawyer avoids representation of a party in a suit against a former client where there may

---

**3.** Although courts in some cases have disqualified attorneys under Canon 9 for the appearance of impropriety, these cases are exceptional and appear to be in the minority. *See Felix v. Balkin*, 49 F.Supp.2d 260, 273 (S.D.N.Y.1999) ("Although Canon 9 'should not be used promiscuously as a convenient tool for disqualification when the facts simply

do not fit within the rubric of other specific ethical and disciplinary rules,' there are circumstances where it may properly be used to disqualify counsel." (citations omitted)); *Rosman v. Shapiro*, 653 F.Supp. 1441, 1446 (S.D.N.Y.1987) (disqualifying an attorney even though the *Allegaert* exception [discussed below] applied).

be the appearance of a possible violation of confidence."). The appearance of impropriety is also what dictates that any doubt about disqualification should be resolved in favor of disqualification. *Papst Motoren GmbH v. Kanematsu–Goshu (U.S.A.) Inc.,* 629 F.Supp. 864, 876 (S.D.N.Y.1986); *Glueck v. Jonathan Logan, Inc.,* 512 F.Supp. 223, 228 (S.D.N.Y.1981).

## II. *Whether I Successor was Proskauer's former client*

■ Defendants argue that there is no basis for plaintiff's motion to disqualify because I Successor is not Proskauer's former client. Proskauer states that I Successor bears no resemblance to Interliant, because it is an empty shell and will not carry on business in the future. The argument ignores the significance of the continuing ethical duties here and case law on the issue.

The Supreme Court held in *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985), that the attorney-client privilege of an insolvent corporation passed to the Chapter 7 bankruptcy trustee because "when control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well." *Id.* at 349, 354, 105 S.Ct. 1986. The same rule applies in a Chapter 11 liquidation. Therefore, the attorney-client privilege of Interliant passed to the post-petition managers, acting in their roles on behalf of the debtor when control of Interliant passed to them. Interliant has not yet died, and the fact that the debtor continues to exist solely to pursue lawsuits to collect assets to pay liabilities is irrelevant just as it was in the Chapter 7 liquidation case the Supreme Court considered in *Weintraub.* The fact that Interliant changed its name to I Successor as a condition of the asset sale is just as irrelevant. I Successor shares the attorney-client privilege of its prepetition predecessor, Interliant, and, consequently, is Proskauer's former client.

Although defendants rely on *Bagdan v. Beck,* 140 F.R.D. 660 (D.N.J.1991), and *Federal Deposit Ins. Corp. v. Amundson,* 682 F.Supp. 981 (D.Minn.1988), for the proposition that a liquidating entity does not share the attorney-client privilege with the pre-liquidation entity, these holdings conflict with the Supreme Court's ruling in *Weintraub.* The Court in *Bagdan* held that "*Weintraub* did not address the viability of the attorney-client privilege of a corporation which is [no longer a viable business and liquidating]." *Id.* at 665. *See also Lewis v. United States,* No. 02–2958, 2004 WL 3203121, at *4–5, 2004 U.S. Dist. LEXIS 26680, at *11–12 (W.D.Tenn. Dec. 7, 2004). To the contrary, that the attorney-client privilege of a corporation continued after the process of liquidation has begun is a necessary predicate for the Supreme Court's holding that the attorney-client privilege passed to the Chapter 7 Trustee in a case where the corporation planned to liquidate. *See Waldschmidt v. Compcare Health Svcs. Ins. Corp. (In re Peck Foods),* 196 B.R. 434, 438 (Bankr. E.D.Wis.1996) ("The underlying principal in *Weintraub* reflects a continuity of the attorney-client relationship from the pre-petition entity through the entity or entities in bankruptcy.").

The District of Minnesota held in *Federal Deposit Ins. Corp. v. Amundson* that the FDIC, which had purchased the assets of a bank and was appointed receiver for the purpose of liquidation, could not exercise the attorney-client privilege of the entity from which it purchased assets because, purportedly unlike in *Weintraub,* "[t]here is no thought or effort to reconstitute the entity or to run it at all." *Id.* at 987. This conclusion by the *Amundson*

court fails to take into account the fact that the Supreme Court in *Weintraub* was also addressing a situation where there was no thought to reconstitute the company, since *Weintraub* involved a Chapter 7 liquidation.

However, that is not to say that the question whether a purchasing entity intends to continue the pre-existing operation of the purchased assets is irrelevant. In *Tekni–Plex, Inc. v. Meyner and Landis*, the Court of Appeals of New York held that "[w]hen ownership of a corporation changes hands, whether the attorney-client relationship transfers as well to the new owners turns on the practical consequences rather than the formalities of the particular transaction."[4] 89 N.Y.2d at 133, 651 N.Y.S.2d 954, 674 N.E.2d 663. The Court of Appeals held that "the mere transfer of assets with no attempt to continue the pre-existing operation generally does not transfer the attorney-client relationship." *Id.* The Court of Appeals turned to the facts before it. Tekni–Plex merged into TP Acquisition Company and ceased to exist as a separate legal entity. *Id.* at 134, 651 N.Y.S.2d 954, 674 N.E.2d 663. The Court held that "[a]s a practical matter, then, old Tekni–Plex did not die." *Id.* The Court continued, "To the contrary, the business operations of old Tekni–Plex continued under the new managers." *Id.* Therefore, the Court concluded that any confidential communications between the law firm and Tekni–Plex passed to the management of new Tekni–Plex. *Id.*

Unlike in the present case, both *Tekni–Plex* and *FDIC* involved the sale of assets or an entity to another corporation. The question in both of those cases was whether the *transfer* of assets to another entity also transferred the attorney-client privilege *to the purchaser*. The pertinent inquiry, as the Court of Appeals held in *Tekni–Plex*, was whether the business operations of the old company were to be continued under new management *by the purchaser* or whether the old company ceased to exist. *FDIC* was correctly decided even though it was premised on a misreading of *Weintraub*. Because there was no thought or effort by FDIC to reconstitute the closed bank or to continue pre-existing operations after purchasing its assets, unlike in *Tekni–Plex*, the attorney-client privilege did not pass to the purchaser, FDIC.

In this case, the issue is not that in *Tekni–Plex* or *FDIC* because I Successor is not the purchaser of assets. Instead, I Successor was the seller, so the inquiry whether there would be ongoing operations of the assets or business *purchased* in *Tekni–Plex* is inapposite. Here, Proskauer does not contend, pursuant to *Tekni–Plex*, that the attorney-client privilege

4. In certain circumstances, the "practical consequences" of a transaction might result in a situation where both the trustee and an entity purchasing assets of the liquidating entity might have recourse to assert a pre-petition corporation's attorney-client privilege. For example, Intrepid Acquisition Corporation ("Intrepid") merely acquired assets of Interliant and did not acquire them as an ongoing entity. But if Intrepid had purchased assets as an ongoing entity, then it would have acquired the attorney-client privilege of Interliant as to the assets it acquired and would continue to operate. If at the same time the purchase were arranged so that certain claims would remain with Interliant's estate, then the Chapter 7 trustee, as a practical matter, would also have the right to assert Interliant's pre-petition attorney-client privilege as to those claims. Examining the "practical consequences" of a transaction does not necessarily mean examining only whether or not a transaction passed the attorney-client privilege to the purchaser but examining as a practical matter what claims or liabilities passed from or remained with the seller pursuant to the transaction to determine whether the attorney-client privilege was important to the transferee and/or the trustee.

passed to the purchasers of Interliant's assets.

To summarize, I Successor is Proskauer's former client, albeit renamed. The claims here asserted derivatively on behalf of I Successor/Interliant are property rights of Interliant that were not sold to Intrepid Acquisition Corporation. The protection of the duties of confidentiality and loyalty owed to I Successor/Interliant as a former client and present litigant in the process of liquidation are just as important as if the company were an ongoing business entity.

### III. *Exception to the substantial relationship test*

In *Allegaert v. Perot*, 565 F.2d 246 (2d Cir.1977), the Second Circuit held that "before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." *Id.* at 250. *See also Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d 182, 187 (S.D.N.Y.2000); *Felix v. Balkin*, 49 F.Supp.2d 260, 268–69 (S.D.N.Y.1999). This represents an exception to the substantial relationship test "where the attorney's representation was of two, commonly interested clients, one of whom is now complaining." *Felix v. Balkin*, 49 F.Supp.2d at 268. *See also Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d at 187; *American Special Risk Ins. Co. v. Delta America Re Ins. Co., DR*, 634 F.Supp. 112, 121 (S.D.N.Y.1986); *United States Football League*, 605 F.Supp. at 1452–53 n. 7; *Neiman v. Local 144, Hotel, Hospital, Nursing Home & Allied Health Svcs. Union, AFL–CIO*, 512 F.Supp. 187, 190 (E.D.N.Y.1981). The substantial relationship test is inapposite in such circumstances because "the former

client could not reasonably expect confidences imparted to the attorney during the course of the joint representation to be withheld from the other client." *Rocchigiani v. World Boxing Counsel*, 82 F.Supp.2d at 187–88. *See also Allegaert*, 565 F.2d at 250; *Felix v. Balkin*, 49 F.Supp.2d at 269; *American Special Risk Ins. Co.*, 634 F.Supp. at 121; *Neiman*, 512 F.Supp. at 190.

Ignoring the duty of loyalty, Proskauer argues that the substantial relationship test does not apply because there could be no expectation of confidentiality that Proskauer would not reveal information to the defendant officers and directors. Proskauer primarily relies on a 1995 Southern District of New York case, *Cohen v. Acorn Int'l Ltd.*, 921 F.Supp. 1062 (S.D.N.Y. 1995), to argue that the exception has been applied outside cases of joint representation where corporations bring motions to disqualify their former attorneys from representing former directors. In that case the firm, Ropes & Gray, previously represented a company, Deran Holding Company ("DHC"), the shares of which were owned by Acorn International Ltd. ("Acorn") and Steven Cohen ("Cohen"). *Id.* at 1063. Subsequently, Ropes & Gray represented Cohen in a securities fraud, fraud, and negligent misrepresentation suit against Acorn and two members of the board of DHC in relation to an acquisition. *Id.* Acorn moved to disqualify DHC's former counsel, Ropes & Gray, from representing Cohen, also a member of DHC's board. *Id.*

The Court in *Cohen* denied disqualification because it found that Acorn's assertion that it is a former client of Ropes & Gray was dubious, since representation of the corporation (DHC) does not signify that the firm also represented shareholders (Acorn), even in a close corporation. *Id.* at 1064. However, the Court went

further and held that, even assuming Acorn was a former client of Ropes & Gray, there would be no expectation of confidentiality because Acorn knew that the firm represented DHC and that Cohen was a member of DHC's board. *Id.* Therefore, the Court held that Acorn could not expect that Ropes & Gray would withhold information from Cohen and that the substantial relationship test did not apply. *Id.*

Proskauer's attempt to portray *Cohen* as analogous to the case before the court is unavailing. It must be emphasized that the Court in *Cohen* did not conclude that Acorn was a former client of Ropes & Gray. The Court assumed that was the case for purposes of the motion to disqualify despite noting that Acorn's claim that it was a client of Ropes & Gray was dubious. The Court could have just as easily assumed that Ropes & Gray represented Cohen as well in the prior representation, since during Ropes & Gray's representation of DHC Cohen owned 60% of DHC's common stock while Acorn only owned 40%. *Id.* at 1063. In fact, under the Court's assumption it is difficult to see how Ropes & Gray could have represented Acorn based on its holding in DHC and not also have represented Cohen given his larger holding. That being the case, under the *Cohen* Court's assumption, it seems Ropes & Gray had to have jointly represented DHC, Acorn, *and* Cohen, and *Cohen* would fit within the joint representation exception to the substantial relationship test without the necessity of referencing Cohen's position as a member of the board of DHC. Although clearly the Court did not assume nor conclude that there was a joint representation of Acorn and Cohen, the Court's reasoning and its implications illustrates that *Cohen*, as set forth under the Court's assumption, is much more analogous to a prior joint representation than is the current case. In the cur-

rent case, Interliant was not a close corporation with only two shareholders, one of which is now suing the other. Moreover, in *Cohen*, it was a shareholder, and not the corporation, that moved to disqualify its former counsel from representing a prior officer and director. *Cohen* is simply inapplicable to the current case on both its legal premise and its facts.

But if the holding in *Cohen* can indeed be read to stand for the proposition that there is no expectation of confidentiality with regard to directors or officers when a firm represents a corporation, as defendants argue, then the case contradicts substantial case law in the Southern District of New York that the exception applies in cases of prior *joint* representation. *Felix v. Balkin,* 49 F.Supp.2d 260, 268 (S.D.N.Y. 1999); *Rocchigiani v. World Boxing Counsel,* 82 F.Supp.2d 182, 187 (S.D.N.Y.2000) ("In *Allegaert,* the Second Circuit created an exception to the substantial relationship test, where the prior representation by the attorney in question was within the context of a joint representation between a former, but now adverse, client and a present, long-standing client."); *American Special Risk Ins. Co. v. Delta America Re Insurance Co.,* 634 F.Supp. 112, 121 (S.D.N.Y. 1986) ("[T]he substantial relationship test is inapplicable to situations where a law firm's alleged disqualification arises out of simultaneous representation of two clients if each client was aware of the other's relationship to the firm and had no reason to believe that confidences of one party would be withheld from the other."); *United States Football League,* 605 F.Supp. at 1452–53 n. 7 ("This element becomes an issue especially in cases where a partnership, joint venture or other cooperative effort breaks up, or where two former co-parties to a litigation later sue each other."); *Neiman v. Local 144, Hotel, Hospital, Nursing Home & Allied Health Svcs.*

*Union, AFL–CIO,* 512 F.Supp. 187, 190 (E.D.N.Y.1981). In this case there was no prior joint representation—Proskauer represented Interliant, not its officers and directors.

To extend the *Allegaert* exception to allow former counsel of a corporation to represent an officer or director against the corporation concerning matters on which the firm worked misunderstands the reasoning of the *Allegaert* decision. In *Allegaert* the Second Circuit specifically differentiated the case before it from another Second Circuit case where it did disqualify counsel, *NCK Org. Ltd. v. Bregman,* 542 F.2d 128 (2d Cir.1976). *Allegaert,* 565 F.2d at 251. In *NCK,* a firm represented a corporation, and then later defended the former director and vice president in a suit brought by the corporation regarding an employment contract the firm had prepared for the corporation. *NCK,* 542 F.2d at 130. The Court in *Allegaert* distinguished its holding in *NCK* because in *Allegaert* the firm sought to be disqualified never switched sides in that the prior joint representation was done with the knowledge that the firm would continue to represent the interests of its pre-existing, primary client. 565 F.2d at 251. The Second Circuit in *Allegaert* noted that " '[i]ntegral to our conclusion that [the firms sought to be disqualified] were not positioned to receive information intended to be withheld from [the primary client] is the law firms' continuous and unbroken legal relationship with their primary clients.' " *Id.* The Court found that "the attorneys sought to be disqualified here have not changed sides from a former client to a current, adverse client." *Id.*

A few courts outside the Second Circuit have extended the exception to the substantial relationship test to circumstances where the former counsel of a corporation seeks to represent an officer or director against its former client, the corporation. *See Christensen v. United States District Court for the Central District of California,* 844 F.2d 694, 698–99 (9th Cir.1988). This Court does not believe that the *Allegaert* exception should be so extended. Aside from the substantial case law holding that the exception applies in cases of prior, *joint* representation, this Court believes that it would undermine a corporation's attorney-client privilege to assume that all information known by its counsel is conveyed to all directors and officers—in the real world, such is not the case. Any individual director or officer might well obtain confidential information from an attorney representing the corporation. But in the ordinary course, that individual would only obtain information relevant to that director or officer's particular work. The attorney, on behalf of the corporation, may learn additional confidential information that may or may not be appropriately disclosed to a specific director or officer. Extending the *Allegaert* exception to these circumstances would allow the law firm that represented the corporation's interests to be in a position to potentially disclose *all* of the confidential information it learned in its representation of the corporation to officers and directors that may or may not have actually received the information, including (as alleged in this case) individuals with personal interests adverse to the corporation.

▬ Moreover, as shown above, the substantial relationship test is meant to protect not only confidences but also the expectation of loyalty by a prior client. *T.C. Theatre Corp.,* 113 F.Supp. at 268–69; *Felix v. Balkin,* 49 F.Supp.2d at 268; *Kassis v. Teacher's Ins. and Annuity Assoc.,* 93 N.Y.2d at 616, 695 N.Y.S.2d 515, 717 N.E.2d 674; *Tekni–Plex, Inc.,* 89 N.Y.2d at 130, 651 N.Y.S.2d 954, 674 N.E.2d 663. Even assuming that the directors and offi-

cers learned all of the confidential information in a firm's prior representation of the corporation, that does not justify allowing a firm to switch sides against its former client on that same matter. The law firm in such circumstances is very differently situated than the law firm that continues to represent *the same party* after a joint representation such as in the *Allegaert* exception. There, not only is confidentiality not a concern but also loyalty is not a concern since the law firm continues to represent its pre-existing, primary client after the joint representation ends. Any representation of the now opposing party was done with the consent of that opposing party with knowledge that the firm would continue to represent its primary client's interests thereafter. *See Laborers Local 1298 Annuity Fund v. Grass (In re Rite Aid Corp. Sec. Litig.)*, 139 F.Supp.2d 649, 659 (E.D.Pa.2001) ("We also observe that *Allegaert's* discussion of a 'primary' client relationship implicitly involves an assessment of where counsel's loyalty should lie." (citations omitted)); *Exterior Sys., Inc. v. Noble Composites, Inc.*, 175 F.Supp.2d 1112, 1122 (N.D.Ind.2001) ("The fact that [the former majority shareholder, chairman of the board of directors, and chief executive officer of the corporation] and [the corporation] always shared confidences does not adequately address an attorney's duty of loyalty."); *Koch v. Koch Indus.*, 798 F.Supp. 1525, 1535–36 (D.Kan. 1992) (holding that even assuming that the court recognized the *Allegaert* exception that it would not apply where a firm that previously represented a corporation then represented a former director and officer of the corporation against the corporation because the duty of loyalty that the firm owes the corporation would go unprotected where the firm switches sides against its former client).

Proskauer also cites to *Neiman v. Local 144, Hotel, Hospital, Nursing Home &* *Allied Health Svcs. Union,* 512 F.Supp. 187 (E.D.N.Y.1981), to support the proposition that a firm can represent a former officer or director against the firm's prior client because there was no expectation of confidentiality. The Court in *Neiman* found that, because of Marvin Neiman's position as a member of the Association's board of directors, the Association could not expect that any information learned by the firm representing the association would have been withheld from Neiman. *Id.* at 190. However, the Court went on to note that, as was the case in *Allegaert,* the Association was aware of the firm's "continuous and unbroken legal relationship" with Neiman. *Id.* The Court found that the Association knew that the firm represented Neiman prior to representing the Association and that the firm continued to represent Neiman simultaneously with the Association. *Id.* at 189. As in *Allegaert,* then, the firm was not switching sides because the Association accepted representation from the firm knowing that it continued to represent its primary client's interests, Neiman's.

Finally, Proskauer cites again to *Bagdan v. Beck, supra,* for support. However, that case is completely inapposite. The Court in *Bagdan* made clear that the attorney in that case previously represented both the company and the board of directors itself because it found that "[w]hatever [the attorney] did, it did on behalf of *both* the Board and [the corporation]." 140 F.R.D. at 664 (emphasis original). Therefore, the Court in *Bagdan* correctly applied the *Allegaert* exception to the substantial relationship test and concluded that there could be no expectation that information given to the firm would be withheld from the board of directors since the firm jointly represented the corporation and the board of directors in the previous representation now in question.

*Id.* at 668. The Court did not conclude that, generally, there is no expectation of confidentiality as to officers and directors when a firm represents a corporation. Instead, the Court held, as did the Second Circuit in *Allegaert,* that when there is a joint representation there is no expectation of confidentiality between the concurrent clients.

Proskauer does not fit within the exception to the substantial relationship test set forth by the Second Circuit in *Allegaert.* Proskauer did switch sides in this case. Proskauer previously represented Interliant on at least two acquisitions and now Proskauer represents directors and officers adverse to Interliant's successor on claims that directly involve those two transactions. Proskauer did not have the "continuous and unbroken legal relationship with their primary clients" that was integral to the Second Circuit's decision in *Allegaert.* In fact, defendants have not asserted that Proskauer previously represented any of the officers and directors. Because the current case does not fall within the *Allegaert* exception, the substantial relationship test applies.[5]

## IV. *Whether there was a substantial relationship*

 Pursuant to the substantial relationship test, courts have granted disqualification when the issues have been "identical" or "essentially the same." *Gov't of India v. Cook Indus., Inc.,* 569 F.2d 737, 740 (2d Cir.1978); *Hammond v. Goodyear Tire & Rubber Co.,* 933 F.Supp. 197, 201 (N.D.N.Y.1996); *United States Football League v. Nat'l Football League,* 605 F.Supp. 1448, 1457 (S.D.N.Y.1985); *Red Ball Interior Demolition Corp. v. Palmadessa,* 908 F.Supp. 1226, 1244 (S.D.N.Y. 1995); *Pereira v. Houze Glass Co. (In re Graff Marketing Corp.),* 42 B.R. 801, 806 (Bankr.S.D.N.Y.1984); *Lightning Park, Inc. v. Wise Lerman & Katz, P.C.,* 197 A.D.2d 52, 609 N.Y.S.2d 904, 906 (App.Div. 1994). However, disqualification may be appropriate when the two matters are merely similar when "disqualification is predicated on the extensiveness of the attorney's exposure during the prior representation to particular practices that are similar to those underlying the subsequent litigation." *Bennett Silvershein Assoc. v. Furman,* 776 F.Supp. 800, 804 (S.D.N.Y. 1991). *See also United States Football League v. Nat'l Football League,* 605 F.Supp. 1448, 1459–60 (S.D.N.Y.1985). A more general representation will only be relevant to a later litigation if "the later litigation fairly puts in issue the entire background of the movant." *United States Football,* 605 F.Supp. at 1460 (holding that a firm could be disqualified from bringing an antitrust action against a former client for which the firm had worked on various corporate and tax matters during the relevant period in question). The test in such circumstances "should focus on direct dealings and the overlap of the en-

---

**5.** Defendants argue for the first time in their reply in opposition to plaintiff's Supplemental Memorandum of Law that, because Proskauer represented its long-time client, Charterhouse Equity Partners III, L.P., prior to Proskauer's representation of Interliant, Interliant could not have expected that Proskauer would remain loyal to Interliant's interests. Although defendants do not directly argue the point, the implication seems to be that Proskauer should be able to continue its representation of Charterhouse Equity Partners III, L.P. because there was no expectation of confidentiality to Charterhouse under the *Allegaert* exception. Besides the fact that this is the first time plaintiff has made this argument, defendants do not even allege that there was a joint representation of Interliant and Charterhouse in regard to the only transaction in which Charterhouse is implicated, Claim Six. As such, on the face of defendants' argument, it does not even appear that the *Allegaert* exception applies to the transaction in Claim Six.

gagement with the events that are the subject of the subsequent action." *Pereira v. Houze Glass Co. (In re Graff Marketing Corp.)*, 42 B.R. 801, 806–07 (Bankr. S.D.N.Y.1984) (holding that an attorney could be disqualified on the basis of general business and financial representation even where there was no evidence that the attorney participated in the transaction at issue because the current lawsuit concerned commissions alleged to have been earned pursuant to the former client's relationship with its current adversary). *See also Interco Sys. Inc. v. Omni Corporate Svcs., Inc.*, 733 F.2d 253, 255 (2d Cir.1984) (holding that counsel could be disqualified from opposing plaintiff's claims of unfair competition and misappropriation of trade secrets where counsel had represented plaintiff as general counsel during the relevant time period). So, "[t]he more wide-ranging the allegations of the complaint, the more likely it is that background legal work will be relevant to the instant litigation." *United States Football*, 605 F.Supp. at 1460.

### A. Claims Ten and Eleven

█ Because this Court has determined that I Successor is Proskauer's former client and because Proskauer has not disputed that it had access to privileged or confidential information during its representation of Interliant on the two acquisitions, Proskauer must be disqualified from representing the defendant officers and directors on Claims Ten and Eleven, which specifically include as part of the claims of breach of fiduciary duty to Interliant and its creditors the two acquisitions on which Proskauer worked. There is more than just a substantial relationship between Proskauer's former work and Claims Ten

and Eleven, since the nature of the two acquisitions on which Proskauer worked is directly in question in Claims Ten and Eleven. Therefore, whether Proskauer represented Interliant substantively on the NaviSite proposal is irrelevant because Proskauer has admitted its representation on the two acquisitions.

█ Proskauer argues that it should be able to represent the defendant officers and directors on Claim 11 because that claim alleges a breach of fiduciary duty to creditors. However, claims based on the breach of fiduciary duty to creditors when a company is in the zone of insolvency are derivative of claims of breach of fiduciary duty to the company itself. Once a corporation becomes insolvent, "the fiduciary duties of corporate officers and directors also extend to creditors." *Kittay v. Atlantic Bank of New York (In re Global Svc. Group LLC)*, 316 B.R. 451, 460 (Bankr. S.D.N.Y.2004) (citing *New York Credit Men's Adjustment Bureau v. Weiss*, 305 N.Y. 1, 7, 110 N.E.2d 397 (1953)). *See also Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 512 (2d Cir.1981) ("The defendants' claim that the duty of directors flows only to the corporation and not to the creditors 'until it is clear that the corporation is no longer a going concern' flies in the face of the New York policy to preserve the assets of insolvent corporations for the creditors."); *Securities Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 330 (Bankr.S.D.N.Y.1999); NORTON BANKRUPTCY LAW AND PRACTICE 2D § 77A:4 (1998) ("When a corporation becomes insolvent, courts have consistently concluded that the fiduciary duty of directors shifts to include creditors.").[6] Proskauer should

---

6. It may be argued that the putative fiduciary duty *to creditors* that is often said to arise when a corporation enters the zone of insolvency is a misconception—the argument being that the officer/director's duty is always *to the corporation*, not to creditors, but that creditors are empowered to assert breach of that duty derivatively on behalf of the corpo-

not be in a position to potentially use confidential information it received representing Interliant against an entity whose claim exists only as a derivative of Interliant's.

Allowing Proskauer to represent defendants on Claim Eleven when the allegations are identical to those in Claim Ten and against the same defendants would sanction a violation of the Code of Professional Responsibility by putting Proskauer in a position to use confidential information learned in its prior representation against its former client. Any information that could be disclosed in Proskauer's representation of defendants in Claim Eleven could be used by those same defendants *on the exact same allegations* in Claim Ten against Proskauer's former client, thereby breaching its Canon 5 duty of loyalty. The circumstances before this Court justify disqualifying Proskauer from Claim Eleven where the Code of Professional Responsibility would be violated indirectly as a result. What cannot be done directly should not be allowed to be done indirectly where it would contravene the purposes of the substantial relationship test to protect a former client's right to confidentiality and loyalty.

### B. *Claims One Through Six*

Proskauer must also be disqualified from representing any defendants on Claims One through Six. The transfers in question in Claims One through Six are incorporated into Claims Ten and Eleven as part of the directors' and officers' alleged pattern of conduct constituting their ongoing breach of fiduciary duty alongside the two acquisitions on which Proskauer previously worked. Although Proskauer did not work on the specific transactions in Claims One through Six, plaintiff's allega-

tions in Claims Ten and Eleven put into question the entire background of debtor and the officers' and directors' conduct in a series of transactions. The particular practices of approving transactions and transferring debtor's assets to third parties in question regarding the transactions on which Proskauer previously worked are similar to the practices questioned in the transactions in Claims One through Six because both involve alleged misconduct by the officers and directors for their own gain in breach of their fiduciary duties. Just as in the case of a prior general representation and then a subsequent suit that puts into question the prior conduct of a corporation, there is an overlap of Proskauer's prior work and the plaintiff's allegations in Counts One through Six because together they are alleged as part of the pattern of conduct that constitutes the directors' and officers' alleged breach of fiduciary duty. Proskauer's prior work on the two acquisitions, then, is substantially related to the transfers in Claims One through Six.

Defendants contend that even if Proskauer is disqualified from representing the defendant officer and directors that Proskauer should be allowed to represent the corporate defendants because Proskauer did not represent Interliant on any of the transactions alleged as part of Claims One through Six. However, plaintiff alleged in the complaint that as a part of the officers' and directors' breach of fiduciary duty to Interliant and creditors in Claims Ten and Eleven that the defendant directors and officers breached their fiduciary duty by "[e]ntering into multiple transactions with interested Directors and Officers and/or entities *that were controlled by interested Directors and Officers,* which were not in the best interests of Interliant and/or not

---

ration when the corporation enters the zone of insolvency. The point is of academic, but

not practical, significance in the context of this case.

properly authorized by Interliant's Board." (emphasis added). Additionally, plaintiff alleged in the complaint that each corporate or partnership defendant was controlled by the former directors or officers of Interliant and that pursuant to their control of those entities and in breach of their fiduciary duty the debtor transferred cash or stock to those entities for their own benefits. Because plaintiff alleges that the defendant officers and directors used the corporate or partnership defendants as recipient vehicles to their own benefit in violation of their duty in both the transactions in Claims One through Six and as part of their ongoing breach of fiduciary duty in Claims Ten and Eleven, Proskauer's representation of Interliant on the two acquisitions is substantially related to the transfers alleged in Claims One through Six even as to the corporate and partnership defendants.

There is evidence that the scope of Proskauer's representation of Interliant was much broader than just the Soft Link, Inc. and reSOURCE Partners, Inc. acquisitions. Of the billing records from June 16, 1999 to May 28, 2002 submitted to the Court, work on the two acquisitions represented less than a quarter of the amount Proskauer billed Interliant. The billing records show that in addition to the work on the two acquisitions Proskauer also completed services for Interliant involving such issues as:

- "review of the Annual Report on Form 10–K, Form 12b–25, and Proxy Statement; issues re: proposed accounts receivable financing; miscellaneous general corporate service and advice"
- "proposed Tim Murray employment arrangements including numerous corporate and tax issues related thereto and to the SMI and the LLC; services in connection with Herbert Hribar employment arrangements, services in connection with various Registration Rights Agreements; services in connection with Lidestri settlement; miscellaneous general corporate services and advice"

These billing statements demonstrate that the scope of Proskauer's representation was more akin to outside general counsel during that two-year period than mere counsel on two or three isolated transactions. Although disqualification could rest on Proskauer's work on the two acquisitions alone, the general nature of Proskauer's work for Interliant over this two-year period reveals that Proskauer's disqualification is well-founded where the complaint alleges conduct that puts the entire period during which Proskauer did miscellaneous and general corporate work for Interliant into question.

Defendants also argue that if the claims based on the transfers in Claims One through Six had been brought as separate actions against the defendants that are corporations or partnerships there would not be a concern about Proskauer's representation. That is not clear in view of the individual defendants' interests in the corporate/partnership defendants. But in any event, the several claims have been brought in one action precisely because of the allegation that the officers and directors controlled the corporate and partnership entities in a continuing course of conduct to siphon money from the debtors for their own benefit. The alleged connection between the two acquisitions and the transfers in Claims One through Six as part of a pattern of conduct constituting a breach of fiduciary duty by the officers and directors was not contrived for purposes of this disqualification motion. In the end, it may be that plaintiff will fail to prove any connection between the various

transfers and acquisitions as a pattern of conduct constituting an ongoing breach of the officers' and directors' fiduciary duty. And it may be that plaintiff will fail to show that the officers and directors had control of the corporate and partnership defendants. However, this Court must examine the motion to disqualify based on the action before the court, which is set forth as the allegations in the complaint that the plaintiff intends to prove if the case were to go to trial. Based on those allegations, there is a substantial relationship between Proskauer's prior representation of Interliant and the entirety of the current action where debtors' entire background leading up to the request for bankruptcy relief is in question.

## V. *Laches argument*

■ Little need be said of defendants' argument that the motion to disqualify should be barred by the doctrine of laches, or that plaintiff's purported delay in bringing the motion shows that the motion is merely a tactical ploy.

Even if there had been delay in moving to disqualify, the Second Circuit has held that "[s]ince ... disqualification is in the public interest, the court cannot act contrary to that interest by permitting a party's delay in moving for disqualification to justify the continuance of a breach of the Code of Professional Responsibility." *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir.1973). *See also Pastor v. Trans World Airlines, Inc.*, 951 F.Supp. 27, 33 (E.D.N.Y.1996) (" 'In this circuit, laches is generally not a defense to a motion to disqualify.' " (citations omitted)); *Gov't of India v. Cook Indus., Inc.*, 422 F.Supp. 1057, 1059–60 n. 4 (S.D.N.Y. 1976) ("[L]aches is normally not a defense to a motion to disqualify."). The Second Circuit noted that in extreme cases delay in making a motion for disqualification might be given some weight but that "the court will not bar a claim on that ground where no prejudice has resulted from the delay." 478 F.2d at 574. (holding that a three-year delay in filing a motion to disqualify did not warrant barring such claim where the party seeking disqualification did not demonstrate any prejudice as a result). *See also British Airways, PLC v. Port Authority of New York and New Jersey*, 862 F.Supp. 889, 901 (E.D.N.Y. 1994) (holding that a two-year delay did not bar the motion where there was no demonstration of unfair prejudice); *Schwed v. General Electric Co.*, 990 F.Supp. 113, 117 (N.D.N.Y.1998) (holding that a ten-month delay did not bar the motion where there was no demonstration of prejudice and "because disqualification is in the public interest where there is an ethical violation"); *Yaretsky v. Blum*, 525 F.Supp. 24, 30–31 (S.D.N.Y.1981) (holding that a five-month delay in filing a motion to disqualify did not bar the motion where there was a reasonable explanation for the delay); *Baird v. Hilton Hotel Corp.*, 771 F.Supp. 24, 28 (E.D.N.Y.1991) (holding that a year delay in filing a motion to disqualify did not bar the motion where there was no evidence that the motion was inspired by dilatory tactics).

In any event, there was no delay in this case. Based on both plaintiff's and defendants' memoranda and supporting affidavits, it does not appear that plaintiff was aware of the potential conflict of interest until after the initial pretrial conference on September 22, 2004. Immediately after that conference plaintiff inquired whether Proskauer had represented Interliant in connection with any of the transactions at issue in the complaint. According to Proskauer's own affidavits, only in conversations during the following weeks did Proskauer disclose that it had represented Interliant on several of the transactions at issue in the complaint. Although clearly

plaintiff knew as early as August 2004 that Proskauer had been retained to represent some of the defendants, nothing in the record indicates that plaintiff knew about the potential conflict of interest prior to the initial pretrial conference at the end of September.

Defendants were put on notice of plaintiff's intention to disqualify Proskauer if it had represented Interliant on any of the transactions at issue in this adversary proceeding even before Proskauer notified plaintiff that it had represented Interliant on some of the transactions. During the same conversation on September 22, 2004 when plaintiff inquired whether Proskauer had represented Interliant on some of the transactions, plaintiff informed Proskauer that plaintiff believed Proskauer should be disqualified if it had. Thereafter, plaintiff discussed the issue with defendants for several weeks before confirming its intent to move for disqualification in a letter dated October 15, 2004. Just over three weeks later, plaintiff filed its motion to disqualify. Filing a motion to disqualify six weeks after becoming aware of the potential conflict and bringing it to the other party's attention and only three weeks after discussions regarding the potential conflict ceased is not the type of dilatory behavior that warrants ignoring the significant issues regarding a prior client's expectation of confidentiality and loyalty present in this case, especially where defendants have not alleged any prejudice resulting from the alleged delay.

### Conclusion and Order

Because Proskauer previously represented Interliant and now seeks to represent parties adverse to Interliant on matters substantially related to that prior representation, Proskauer should be disqualified. The Court does not reach the question whether disqualification is required under the attorney-witness rule.

Upon the foregoing, plaintiff's motion for disqualification of Proskauer Rose LLP is **GRANTED**.

It is **SO ORDERED**.